CROSS, Judge.
Appellant-plaintiff, Walter Urchisin, appeals from final order entered in favor of the appellee-defendant, Ralph A. Hauser, dismissing with prejudice plaintiff’s amended complaint in an action for defamation. We reverse.
Eliminating the superfluous and formal parts of the amended complaint, the facts alleged therein are as follows: The plaintiff, Walter Urchisin, is an attorney and duly admitted to the practice of law in the State of Florida, maintaining an office for the private practice of law in Deer-field Beach, Broward County, Florida. The plaintiff has been and is presently City Prosecutor for the City of Deerfield Beach, Florida. On or about February 2, 1967, the defendant, Ralph A. Hauser, [a City Commissioner] made certain statements hereinafter set forth to a reporter for the Fort Lauderdale Daily News. The statements were reproduced and quoted directly in the February 2, 1967, edition of the Fort Lauderdale Daily News. Among the statements made by the defendant to the newspaper reporter were the following:
“First, Mr. Urchisin’s respect for the truth is not famous. And second, I know he considers his services invaluable to the City, but the taxpayers might consider them to be awfully, awfully expensive.”
The complaint alleges that the aforesaid statements with reference to the plaintiff’s respect for the truth clearly state and imply that the plaintiff is not truthful or respectful of the truth, and that such statements are false and were made with intent to injure the reputation of the plaintiff maliciously; the statement aforesaid relating to the cost of plaintiff’s services clearly expresses and/or implies that the plaintiff overcharges or would overcharge the City of Deerfield Beach for his professional services in the office which he presently holds, should he be continued in that office ; and that this statement is a direct and unwarranted attack upon the professional reputation of the plaintiff and is false and was maliciously made with intent to injure the plaintiff’s reputation in this regard.
Other allegations assert that the plaintiff was “called a boy” when in fact the plaintiff is a mature man of forty years of age, and the statement was calculated to demean and ridicule the plaintiff as a mature, professional person, and was *754 made with actual or implied malice and intent to injure the plaintiff and his professional reputation.
The complaint goes on to assert that the plaintiff would reasonably suffer actual loss of income and clients as a result of the alleged slander and reproduction of the said slander, and that the aforesaid statements alleged to have been made by the defendant relating to the plaintiff were made with the knowledge by the defendant that such statements were false and that the defendant knew that such statements were false when he uttered them. The plaintiff finally prayed for compensatory and punitive damages against the defendant, and demanded trial by jury.
Thereafter, the defendant filed a motion to dismiss the complaint, asserting therein that the plaintiff had insufficiently alleged the elements of a cause of action for slander, that the defendant was absolutely privileged in communicating the alleged slanderous matter concerning the city prosecutor or his office, and that the plaintiff pursuant to the Florida Rules of Civil Procedure and in accordance with paragraph three of the amended complaint had failed to attach the entire article as alleged.
The court thereafter granted defendant’s motion to dismiss, granting leave for the plaintiff to file a second amended complaint within ten days from the date of the order.
Within the time allotted by the court, the plaintiff filed an amendment to plaintiff’s amended complaint and attached thereto the complete copy of the Fort Lau-derdale News article in which it is asserted the slander took place.
Thereafter the defendant moved to dismiss the amended complaint for failure to state a cause of action, asserting as reasons therefor that the plaintiff had insufficiently alleged the elements of a cause of action for slander; that the defendant was absolutely privileged in communicating the alleged slanderous matter concerning the city prosecutor or his office, and that the defendant had a qualified privilege in communicating the alleged slanderous matter concerning the city prosecutor or his office in response to a statement made by the plaintiff and quoted in the article attached to the amendment to plaintiff’s amended complaint.
Thereafter the court entered its order dismissing plaintiff’s amended complaint, stating the reason therefor:
“* * * [Tjhat the pleadings, together with the full exhibit attached thereto on their face disclose a defensive declaration to a previous statement made by the Plaintiff, which constituted an endeavor to vindicate Defendant’s character or protect his interest, even though such statement by the Defendant was or may be false, or malicious.
“It is settled law that when one person assails the other in the public press, the latter is entitled to reply therein, so long as the reply does not exceed the occasion, and he cannot be held responsible for any resultant injury therefor, as a qualified privilege.
“It would further appear from the pleadings, and the exhibit attached thereto and made a part thereof, that the Defendant was acting within the scope of his authority as a municipal officer, acting in his quasi-legislative capacity, and might well have the defense of absolute privilege even though the statement made by him was or may be false, or malicious.”
Beginning in 1964 with New York Times v. Sullivan, 1964, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, 95 A.L.R.2d 1412, the United States Supreme Court has established a new law of libel with constitutional dimensions. State laws of libel that fail to provide safeguards for freedom of speech and of the press guaranteed by the first amendment of the United States *755 Constitution and made applicable to states by the fourteenth amendment are constitutionally deficient. Therefore, we feel an examination of these new cases will make the decisive application of the new law to the instant case fully apparent.
It appears now that public officials and other public figures are subject to vigorous attack, including under certain circumstances defamatory and untruthful attack. The majority of the court in New York Times v. Sullivan, supra, held that an action by a public official for libel must be considered “against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.” The New York Times rule emerging from this constitutional background is that the “constitutional guarantees * * * prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with ‘actual malice’ — that is, with knowledge that it was false or with reckless disregard of whether it was false or not.”
The New York Times’ concept of “public official” was broadened in Rosenblatt v. Baer, 1966, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597, to include a former and non-elected public official, a man who had been a supervisor of a county recreation area whose conduct while in that position was criticized by a newspaper in defamatory terms.
Another case, Time, Inc. v. Hill, 1967, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456, extended the New York Times principle to non-governmental issues and non-governmental persons. In Time, Inc., supra, there was involved a non-defamatory invasion of privacy as to an ordinary private citizen catapulted into the news through events over which he had no control. The application of the New York Times rule to defamation of non-official public figures was reached squarely in Curtis Publishing Co. v. Butts and Associated Press v. Walker, 1967, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094. Wally Butts was the athletic director of the state-supported University of Georgia and a respected figure in his coaching profession. He was employed by a private organization and not a state agency. Irwin A. Walker was a private citizen although he had previously pursued a long and honorable career in the United States Army. The court in the Butts and Walker decisions stated that both Butts and Walker commanded a substantial amount of independent public interest at the time of the publications, and they considered both Butts and Walker to be “public figures” under ordinary tort rules.
The Court of Appeals for the Eighth Circuit reached a similar result in Pauling v. Globe-Democrat Publishing Company, 8 Cir.1966, 362 F.2d 188, even prior to the Butts and Walker decisions. The court considered Pauling to be a public figure because he was a scholar and scientist of international prominence. The court stated that:
“[A] rational distinction cannot be founded on the assumption that criticism of private citizens who seek to lead in the determination of national policy will be less important to the public interest than will criticism of government officials. A lobbyist, a person dominant in a political party, the head of any pressure group, or any significant leader may possess a capacity for influencing public policy as great or greater than that of a comparatively minor public official who is clearly subject to New York Times.”
Thus it can be seen that the communication involved in the present case was qualifiedly privileged on the ground that the plaintiff was both a public official and a public figure. The plaintiff was a public official by virtue of his being *756 city prosecutor, and after being discharged from that position by the city commission, he certainly could have been considered a public figure, since he would command a substantial amount of independent public interest at the time of the publication of the newspaper article asserted to be defamatory.
In its order the trial court stated initially that the pleadings, together with the full exhibit attached thereto, showed that the defendant had a qualified privilege. Since a qualified privilege dissipates upon the showing of actual malice, the trial court would be correct in its determination had there not been sufficient allegations of actual malice.
The party moving to dismiss a complaint concedes the truth of all material allegations of fact and challenges only the conclusions of law. The question of the sufficiency of the evidence which the plaintiff will likely be able to produce at a hearing on the merits is wholly irrelevant and immaterial to a determination of whether plaintiff’s complaint can withstand a motion to dismiss for failure to state a cause of action. Kest v. Nathanson, Fla.App.1968, 216 So.2d 233.
The amended complaint alleged that the statements were false and made by the defendant with an intent to injure the reputation of the plaintiff; that they were an unwarranted attack upon the professional reputation of the plaintiff; that they were false and maliciously made with an intent to injure the plaintiff’s reputation; and finally, that the statements alleged had been made by the defendant relating to the plaintiff with knowledge by the defendant that such statements were false and that the defendant knew the statements were false when he uttered them. We are of the opinion that both malice and untruthfulness were sufficiently alleged in the complaint.
At this stage of the proceedings in this case, since both malice and falsity were sufficiently alleged, these allegations must be presumed to be true. Immunity under the qualified privilege doctrine requires the absence of actual malice. Where malice must be presumed, the claim of qualified privilege is unavailable. The road that leads to a successful culmination of a libel suit has many hazards and hurdles. Particularly for a public official of public figure, the road has become rockier. However, in this case at this stage of the proceedings, the plaintiff should not be blocked by the granting of a motion to dismiss the complaint from embarking on the journey.
Finally, the court in its order dismissing the plaintiff’s amended complaint states that it would appear from the pleadings and exhibit attached thereto that the defendant was acting within the scope of his authority as a municipal officer, acting in his quasi-legislative capacity, and might well have the defense of absolute privilege even though the statement made by him was or may be false or malicious. In a recent determination, the Supreme Court of Florida held in McNayr v. Kelly, Fla.1966, 184 So.2d 428, adhering to its previous determination that words spoken or written by public servants in judicial and legislative activities are protected by absolute privilege from liability for defamation however false or malicious or badly motivated the accusation may be, and that no action will lie therefor ■ in this state; further, that it is not questioned that such absolute immunity in this state extends to county and municipal officials and legislative or quasi-legislative activities as well as to members of state legislature and activities connected with state legislation. The supreme court extended the absolute privilege doctrine to executive officials of government where the defamatory publications are made in connection with the performance of the duties and responsibilities of their office to the same extent as such absolute immunity is afforded to members of the legislative and judicial branches of the government.
*757 We are of the opinion that the determining factor in granting absolute privilege to executive, legislative or judicial officials of the government is the determination as to whether these defamatory publications were made in connection with the performance of the duties and responsibilities of their office. If an officer in a legislative, judicial or executive department of the government departs from official duty and indulges in defamatory statements wholly irrelevant and foreign to the scope of his duties, he is not entitled to protection.
At the stage of the proceedings in the instant case it is impossible to state that the defendant has an absolute privilege since we do not know at this stage whether the asserted defamatory publication was made in connection with the performance of the duties and responsibilities of the defendant’s office of city commissioner, or whether the defamatory statement was wholly irrelevant and foreign to the scope of his office. Thus the trial court was in error in dismissing the plaintiff’s complaint on the basis of (1) qualified privilege, or (2) absolute privilege.
Accordingly, the final order dismissing with prejudice plaintiff’s amended complaint is reversed, and the cause is remanded with directions for further proceedings consistent with this opinion.
Reversed and remanded.
REED, J., concurs.
McCAIN, J., dissents, with opinion.