139 So.2d 197 (1962)
Almon C. McCORMICK, Appellant,
v.
The MIAMI HERALD PUBLISHING COMPANY, a Florida Corporation, and John S. Knight, Appellees.
No. 2497.
District Court of Appeal of Florida. Second District.
March 21, 1962.
*198 Joseph C. Kozlick, Cocoa, for appellant.
Dwight Sullivan of Scott, McCarthy, Preston, Steel & Gilleland, Miami, for appellees.
SMITH, Judge.
Plaintiff, Almon C. McCormick (appellant) filed his amended complaint against the defendants, The Miami Herald Publishing Company, a Florida corporation, and John S. Knight, the Editor and Publisher of the Miami Herald Publishing Company (appellees) in an action for libel. The complaint alleges neither malice nor special damages, and the plaintiff concedes that if the alleged publications are not libelous per se, then the complaint fails to state a cause of action and the judgment of the court dismissing the complaint should be sustained. The allegations with respect to the published articles are as follows:
"That on February 3, 1960, the Defendants THE MIAMI HERALD PUBLISHING COMPANY and JOHN S. KNIGHT, did publish of and concerning the Plaintiff on the front page of The Brevard Edition of The Miami Herald, the following words, to-wit:
 "`COUNCILMAN'S SALARY
 "TAGGED" IN
 TAX MOVE
 JANUARY PAY IS SEIZED
 U.S. FILES LEVY ACTION
 by Dan Brown
 Cocoa Bureau Chief
"`COCOA  Federal agents began picking up City Councilman Almon C. McCormick's City pay checks Tuesday as the government pressed a claim for $40,101.05 in back taxes.
"`McCormick immediately huddled with the Internal Revenue Service and said he hoped to have the claim settled by Friday.
"`Words of the pay check seizure came from City manager Roy Amos who confirmed reports of the action and said the City had begun to turn McCormick's $1,800 yearly salary over to the IRS.
"`The payments  which started on an IRS "levy action"  began with McCormick's $150.00 check for January, Amos added.
"`In place of the money, McCormick got a notice of the action.
"`Mr. McCormick said he's been battling with the IRS for several years.
"`"I could have told you about this a long time ago," he said, "I've gotten it down from a large figure to a small one.
"`"It'll be settled all right * * * I hope to get a release from them Friday".
"`"* * * and they can make mistakes, too."'
"`At the IRS district office at Jacksonville, an officer said McCormick's wages were seized because the government had not been able to collect the $40,101.05 it claims he owes.
"`The IRS explained seizures are the "last resort" of the service. He explained the service mails "demands for payment", phones, discusses the claim with the taxpayer in person and files liens "in the public record" before resorting to seizures.
"`The claim against McCormick was filed in Brevard Circuit Court at Titusville before IRS men seized McCormick's City salary.
"`The records show four federal liens against the councilman.

*199 "`Three are for personal income taxes, the fourth is for taxes of the estate of C.K. McCormick (the councilman's father), A.C. McCormick administrator.
"`The estate lien filed on Dec. 3, 1959, is for $38,342.58.
"`The three liens for personal taxes total $1,758.47. One was filed in 1957. The other two were placed on record during September and October, 1959.
"`None of the liens carry "marginal satisfactions"  evidence they have been met in full or in part.
"`McCormick, a two-year veteran of service as a City Councilman was reelected in November.
"`He operates a gasoline station in partnership with a brother, also runs a construction company, and owns some rental property.'
"That on February 5, 1960, the Defendants THE MIAMI HERALD PUBLISHING COMPANY and JOHN S. KNIGHT, did publish of and concerning the Plaintiff, on the front page of The Brevard Edition of The Miami Herald, the following words, to-wit:
"`U.S. WITHDRAWS 3 TAX LIENS AGAINST COCOA COUNCILMAN
"`Herald Bureau
"`The U.S. Internal Revenue Service has released its hold on COCOA City Councilman Almon C. McCormick's City paychecks and withdrawn three liens for back income taxes which has been filed against him.
"`City manager Roy Amos and G.M. Simmons, Clerk of the Brevard County Circuit Court, reported the actions Thursday. They said orders cancelling the three liens and the hold were received late Wednesday.
"`The IRS had seized McCormick's $150 per month City salary and was applying the money toward the $1,758.47 in personal income taxes it claimed he owed.
"`The notice to Simmons meant the personal taxes has been paid.
"`Still unreleased Thursday was a $38,342.58 lien against the `estate of C.K. McCormick, A.C. McCormick administrator'  a lien about which McCormick has been duddling with IRS agents.
"`Two of the unreleased personal liens  one of $1,321.37 and one for $31.23  were filed in late 1959. The other $405.87 had been filed in the Brevard County Courthouse since 1957.'
* * * * * *
That the said publications were false in that the salary of the Plaintiff was not picked up by the Federal Agents, at the time of said publications, or at any time prior to said publications, nor has said salary been picked up by Federal Agents to the date of the filing of this cause, but that on the contrary, the Plaintiff received his check for January and for each and every month during his tenure in office as City Councilman, in the normal and regular course of such disbursements, and that the Plaintiff has continued to the date of the filing of this Complaint to regularly receive his pay checks; that the government did not ever, and does not now, press a claim against the Plaintiff for $40,101.05 in back taxes, nor does it now claim and never has claimed that the Plaintiff has owed the sum of $40,101.05, but did on the date of said publications press a claim against the Plaintiff in the amount of $1,758.47; that there are not now, nor have there ever been, four liens filed against the Plaintiff, but there were filed three (3) unsatisfied liens against the Plaintiff on the date of said publications; that the City Manager Roy Amos never *200 confirmed reports of the seizure nor stated that the City had begun to turn the salary of the Plaintiff over to the IRS."
The complaint then alleges that the foregoing publications were libelous per se; that they were false and unprivileged; that the natural and proximate consequence of said publications were necessarily to expose the plaintiff to distrust, hatred, contempt, ridicule, and to bring him into ill repute and injure him in his public office; to destroy his constituents' confidence in his integrity and cast doubt on his honesty and fitness for public office and also to cast doubt on his financial responsibility and solvency; and that when construed as the common mind would naturally understand them, the said publications necessarily imputed the plaintiff with the commission of a crime. The plaintiff further alleged notice to the defendants pursuant to Section 770.01, Florida Statutes, F.S.A., and failure to retract.
"Libel per se may be defined as the false and unprivileged publication by letter, newspaper, or other form of writing, of unfounded statements or charges which expose a person to hatred, distrust, contempt, ridicule, or obloquy, or which tend to cause such person to be avoided, or which have a tendency to injure such person in his office, occupation, business, or employment, and which are such that in their natural and proximate consequence, will necessarily cause injury to the person concerned, in his personal, social, official, or business relations of life, so that legal injury may be presumed or implied from the bare fact of the publication itself. Briggs v. Brown, 55 Fla. 417, 46 So. 325." Layne v. Tribune Co., 108 Fla. 177, 146 So. 234, 86 A.L.R. 466.
The language of the published articles should not be interpreted by extremes, but should be construed as the common mind would naturally understand it. Walsh v. Miami Herald Publishing Company, Fla. 1955, 80 So.2d 669; Budd v. J.Y. Gooch Co., 1946, 157 Fla. 716, 27 So.2d 72.
In the case of Caldwell v. Crowell-Collier Publishing Company, 5 Cir., 1947, 161 F.2d 333, which involved a publication implying that Millard Caldwell, then Governor of Florida, condoned lynching, the court stated:
"* * * Imputation of a crime is not present. But it is enough, if the natural or necessary result of the imputation is to hold one up to public hatred, contempt or ridicule, 33 Am.Jur., Libel and Slander, § 45; or to prejudice him in his profession, office, occupation or employment, Id. § 63, and more particularly in his public office * * *."
"It has been held that newspapers are not to be held to the exact facts or to the most minute details of the transactions they publish, that what the law requires is that the publication shall be substantially true, and that mere inaccuracies, not affecting materially the purport of the article, are immaterial." 53 C.J.S. Libel and Slander § 122.
A workable test is whether the libel as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced. Greenberg v. Winchell, Sup., 136 N.Y.S.2d 877.
With the aid of these general principles, we now consider the articles with reference to the alleged untruths. The plaintiff contends that the publications impute him with a commission of a crime, and he refers us to Sections 7201, 7202, and 7203 of the Internal Revenue Code, 26 U.S.C.A. §§ 7201-7203. Examination of these sections reveal that each condemns and makes a crime the evading or defeating, or the willful failure to pay over taxes or the willful failure to pay income taxes, but the articles do not accuse the plaintiff of these crimes.
*201 In further analyzing the complaint, we eliminate from the articles the parts thereof alleged to be false. We then find that the articles would not have produced a different effect, as the common mind would naturally understand them, than that which they produced with the alleged false parts included. To demonstrate only in one instance, the complaint alleges as false that part of the articles which recite that the salary of the plaintiff was picked up by the Federal Agents. This leaves in the articles all of those parts referring to the pay check seizures, the levy action by the Government, and other statements of similar import which are not alleged to be false. Although the articles are not a model of objective journalism, when considered in the light of the small portions thereof alleged to be false, they were not libelous per se.
The judgement is affirmed.
ALLEN, Acting C.J., and KANNER, J., concur.