235 So.2d 759 (1970)
S. Edward BISHOP, Appellant,
v.
WOMETCO ENTERPRISES, INC., a Florida Corporation, Appellee.
No. 69-522.
District Court of Appeal of Florida, Third District.
May 26, 1970.
Rehearing Denied June 17, 1970.
Richard M. Gale, Wallace & Kreutzer, Miami, Wilson C. McGee, Orlando, for appellant.
Scott, McCarthy, Steel, Hector & Davis, and Dwight Sullivan, Miami, for appellee.
Before PEARSON, C.J., and BARKDULL and HENDRY, JJ.
PER CURIAM.
Appellant, plaintiff in the trial court, seeks review of an adverse summary judgment. From the record, it appears that the appellant was employed in his professional capacity as an investigator for the *760 City of Miami, when it was allegedly conducting an investigation of tax assessment practices or deficiencies in the Tax Assessor's Office of Metropolitan Dade County. At a public hearing, the appellant testified before the City Commission of the City of Miami relative to certain properties identifiable as belonging either to the appellee or to its principal officer. His testimony was such as to indicate that these properties had received preferential tax treatment by the assessment officials of the County. The appellee [the owner of a local television station] responded in a series of editorials which apparently intended to demonstrate that the appellant either intentionally or otherwise gave inaccurate testimony before the public hearing.
At this stage of the proceedings, only one of these editorials is pertinent hereto, that being the one of May 18, 1967.[1] Any complaint as to the others has been eliminated by the failure to assign error directed thereto or by preserving as a point on appeal. Alliance for Conservation of Natural Resources in Pinellas County v. Furen, Fla.App. 1960, 122 So.2d 51; Central Bank and Trust Company v. Banner Trading Co., Fla.App. 1963, 157 So.2d 201; Williams v. Williams, Fla.App. 1965, 172 So.2d 488; Booker v. Lima, Fla.App. 1966, 182 So.2d 642; Rule 3.7, subd. i, F.A.R., 32 F.S.A.
The appellant, as a paid professional employee of the City of Miami, brought himself into the public arena and *761 subjected himself to criticism and fair comment, and the mere fact that certain portions of the editorial may have been inaccurate would not constitute a libel, per se.[2] See: Abram v. Odham, Fla. 1956, 89 So.2d 334; Gibson v. Maloney, Fla. 1970, 231 So.2d 823; Time, Inc. v. Hill, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456. "See generally" Urchisin v. Hauser, Fla. App. 1969, 221 So.2d 752, rev. Hauser v. Urchisin, Fla. 1970, 231 So.2d 6. The authorities enunciated by the Supreme Court of the United States in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, are applicable to this cause. From his own testimony, it is clear that Bishop testified at a public hearing before the Commission because he was under retainer by the City.
Whether he was a public official [under New York Times Co. v. Sullivan, supra], a public figure [Associated Press v. Walker, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094], or whether he simply involved himself in a matter of public interest [Gibson v. Maloney, supra; Time, Inc. v. McLaney, 5th Cir.1969, 406 F.2d 565, cert. denied 395 U.S. 922, 89 S.Ct. 1776, 23 L.Ed.2d 239], or whether his appearance and testimony before the Miami City Commission was a matter of public interest [United Medical Laboratories v. Columbia Broadcasting System, 9th Cir.1968, 404 F.2d 706; Bon Air Hotel, Inc. v. Time, Inc., S.D.Ga. 1969, 295 F. Supp. 704], it is clear that the rule in New York Times Co. v. Sullivan, supra, applies, which requires proof that the alleged libels were published with "`actual malice'  that is, with knowledge that it was false or with reckless disregard of whether it was false or not". Until there is proof of actual malice and unless that proof has the "convincing clarity which the constitutional standard demands", it is insufficient. New York Times Co. v. Sullivan, supra.
The United States Supreme Court has said that "only those false statements made with the high degree of awareness of their probable falsity demanded by [New York Times Co. v. Sullivan, supra] may be the subject of either civil or criminal actions". Garrison v. Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125. The court further said:
* * * * * *
"There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice." [St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262.]
* * * * * *
The case of New York Times Co. v. Sullivan, supra, involved a paid advertisement that contained factually erroneous statements. No one had checked the advertising copy for accuracy against the news stories in the Times' own files, which correctly set out the facts. The court held this omission insufficient to establish actual malice, saying:
* * * * * *
"The mere presence of the stories in the files does not, of course establish that the Times `knew' the advertisement was false, since the state of mind required for actual malice would have to be brought home to the persons in the *762 Times' organization having responsibility for the publication of the advertisement."
* * * * * *
In St. Amant v. Thompson, supra, Thompson made false statements about St. Amant, relying solely on an affidavit instead of checking with others who might have known the true facts. The court said:
* * * * * *
"By no proper test of reckless disregard was St. Amant's broadcast a reckless publication about a public officer. Nothing referred to by the Louisiana courts indicates an awareness by St. Amant of the probable falsity of Albin's statement about Thompson. Failure to investigate does not in itself establish bad faith."
* * * * * *
See also, Pauling v. Globe-Democrat Publishing Co., 8th Cir.1966, 362 F.2d 188, cert. denied 388 U.S. 909, 87 S.Ct. 2097, 18 L.Ed.2d 1347.
In White v. Fletcher, Fla. 1956, 90 So.2d 129, the Florida Supreme Court anticipated the later decision in New York Times Co. v. Sullivan, supra. The alleged defamation in this case was the statement that White "is not fit to be a police officer". In affirming a summary judgment for the defendant, the court said:
* * * * * *
"As expressed by Mr. Justice Terrell in Kennett v. Barber, 159 Fla. 81, 31 So.2d 44, 46, this Court held:
`We think the rule is now generally accepted that any one who seeks public employment or public office or who makes his living by dealing with the public or otherwise seeks public patronage, submits his private character to the scrutiny of those whose patronage he implores, and that they may determine whether it squares with such a standard of integrity and correct morals as warrants their approval.' [Emphasis added.]
"The uniformed policeman, therefore, was certainly subject to fair comment and criticism from any member of the public of the City of Orlando. The generally accepted rule is that `public officials' or `public men' are subject to such fair comment."
* * * * * *
Even if there were some inaccuracies in the editorial, these in and of themselves will not establish malice [Layne v. Tribune Co., 108 Fla. 177, 146 So. 234; McCormick v. Miami Herald Publishing Company, Fla.App. 1962, 139 So.2d 197; Hammond v. Times Publishing Co., Fla.App. 1964, 162 So.2d 681; 53 C.J.S. Libel and Slander § 122], which is a necessary ingredient for the appellant's cause of action. The test to be used in determining the effect of inaccuracies has recently been pointed out by the Second District Court of Appeal of Florida in the case of Hill v. Lakeland Ledger Publishing Corporation, Fla.App. 1970, 231 So.2d 254 [opinion filed January 30, 1970], wherein the following is found:
* * * * * *
"We conclude, therefore, that this case is controlled by our holding in McCormick v. Miami Herald Publishing Co. We there stated:
"`[4] A workable test is whether the libel as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced. Greenberg v. Winchell, Sup., 136 N.Y.S.2d 877.'
"Applying this test, we find that if we eliminate the alleged falsities the article would not have produced a different effect, as the common mind would naturally understand it, than that which it produced with the falsities included. * * *"
* * * * * *
*763 Applying this test to the case at bar, the fact that the record indicates that the appellant was in a local hospital in Dade County and not beyond the reach of local law enforcement process servers, makes certain statements in the broadcast referred to in footnote [1] inaccurate. However, these inaccuracies would not lead the viewer or the listener to a different conclusion than the import gained from the entire editorial. Therefore, the action of the trial judge is sustainable under the following authorities: Jacova v. Southern Radio and Television Company, Fla. 1955, 83 So.2d 34; Abram v. Odham, supra; Gibson v. Maloney, supra; New York Times Co. v. Sullivan, supra; St. Amant v. Thompson, supra. See also: United Medical Laboratories, Inc. v. Columbia Broadcasting System, Inc., supra; Time, Inc. v. McLaney, supra; Lloyd v. Gerber Products Company, Dist.Ct.Ark. 1966, 260 F. Supp. 735; Bon Air Hotel, Inc. v. Time, Inc., supra; Ragano v. Time, Inc., Dist.Ct., Fla. 1969, 302 F. Supp. 1005; Washington Post Company v. Keogh, 1966, 125 U.S.App.D.C. 32, 365 F.2d 965.
Affirmed.
NOTES
[1] Which reads as follows:

"`TAX ASSESSMENT TRUTH AND FICTION'
"An official investigation ordered by the City of Miami should not be a window-dressing affair  nor should the results of such a probe be less than accurate.
"Mr. Ed Bishop, a private investigator hired by the city for $12,500.00, reported yesterday to the City Commission some results of his investigation of the County tax assessment office.
"Bishop produced a select group of 22 properties which he claimed received reduced assessments. Bishop apparently felt the reductions were not justified.
"In further checking Bishop's allegations, we find the investigator is wrong.
"For example, Bishop said Richard's Department Stores had assessments on two of its shopping center locations reduced last year. Richard's President Paul Walker said today that Richard's does not pay taxes on properties since the stores don't even own the properties.
"Mr. Walker, incidentally, was foreman of the immediate past Grand Jury, the Jury which issued a contempt citation against Bishop when he refused to show the Jury his tax probe reports. Bishop avoided the citation and a possible jail stay by checking into a hospital out of Dade County and beyond the Jury's legal reach. Bishop's doctor allowed him to leave the hospital the day after the Jury's six month term ended.
"Bishop's list also alluded to the Jordan Marsh department store at Dadeland saying its assessment dropped from nearly a million and a half dollars to $375,000.00.
"The facts are that the 1965 assessment was $90,000.00 because the store was not yet operational, only the land was taxed. The first full assessment was $375,000; $285,000 more than the year before. Bishop apparently had used preliminary estimates which were never used for actual assessment.
"Another example of Bishop's inept investigation is his report on three Wometco Enterprises properties. Bishop says the Miami Theatre dropped in assessment from a $1,000,100.00 to $890,000.00. Wrong again. The highest assessment was $996,000.00. That leaves Bishop in error by $120,400.00. He is off by about $170,000.00 in his figures on the Carib Theater and Wometco vending building and $30,000.00 too high in his figures on Wometco President Mitchell Wolfson's home.
"What it all boils down to is that Mr. Bishop has come forth with a misleading and erroneous report.
"There may be similar errors on the other properties on the list.
"But Miami Mayor Robert King High, the City Commission and City Attorney Jack Rice have a public duty to check the accuracy of the Bishop report.
"We'd like to know if Mr. Bishop is just plainly incompetent and irresponsible or is this just plain politics?"
[2] We do not go into the question of whether statements made on television constitute libel or slander. In the instant case they were reduced to writing and this would be sufficient, if the matter were libelous, to support a libel action. Gearhart v. WSAZ, Inc., Dist.Ct.Ky. 1957, 150 F. Supp. 98; American Broadcasting-Paramount Theatres, Inc. v. Simpson, 106 Ga. App. 230, 126 S.E.2d 873; Landau v. Columbia Broadcasting System, 205 Misc. 357, 128 N.Y.S.2d 254; Shor v. Billingsley, 4 Misc.2d 857, 158 N.Y.S.2d 476; Gibler v. Houston Post Company, Ct. of Civ.App. Tex. 1958, 310 S.W.2d 377.