433 So.2d 593 (1983)
Julian BYRD, Appellant/Cross Appellee,
v.
HUSTLER MAGAZINE, INC., a Foreign Corporation, Appellee/Cross Appellant.
No. 81-2410.
District Court of Appeal of Florida, Fourth District.
June 8, 1983.
Rehearing Denied July 13, 1983.
*594 DiGiulian, Spellacy & DiChiara, Fort Lauderdale, and Larry Klein, West Palm Beach, for appellant/cross appellee.
Larry S. Stewart and Ellen C. Freidin of Floyd, Pearson, Stewart, Richman, Greer & Weil, P.A., Miami, for appellee/cross appellant.
HURLEY, Judge.
The pivotal question in this libel case is whether a picture and its caption must be viewed as a composite to determine if the publication is defamatory. We answer in the affirmative and, because the composite is neither false nor defamatory, we reverse.
Julian Byrd, a professional model, posed for a Viceroy cigarette advertising campaign. The resulting photograph, which was used as part of a printed advertisement, depicted Mr. Byrd dressed in informal outdoor wear making the famous "V for victory" sign. Hustler magazine retouched and reprinted the photograph in its January 1978 edition. In the Hustler version, one of Mr. Byrd's fingers was airbrushed out. Thus, it gave the impression that Mr. Byrd was making an obscene gesture. The following caption appeared directly beneath the picture: "Up Your Ad When you saw this ad in magazines or on billboards, you might remember having seen this gentleman with two fingers  rather than one  raised in front of his face. But the reader who sent us this couldn't resist the temptation to change the picture. We can't blame him  this is probably what the cigarette companies are saying to Americans."
Mr. Byrd sued Hustler for libel and invasion of privacy. The libel count alleged that the picture defamed Mr. Byrd by creating the false impression that he posed for the picture as it appeared in Hustler. Similarly, the invasion of privacy count alleged portrayal in a false light, i.e., Mr. Byrd contended that the publication gave the false impression that he posed for the picture as it appeared in Hustler. In support of these allegations, Mr. Byrd testified that the publication injured his professional reputation. He explained that he purposefully cultivated a conservative, wholesome image in order to be attractive to certain advertisers. Additionally, he offered expert testimony to indicate that these advertisers would not hire the "rebellious ... anti-establishment kind of character" portrayed in the magazine.
Hustler defended on two grounds. First, it contended that the picture and caption, taken together, did not convey a false impression. Second, it asserted that the publication was a constitutionally privileged expression of opinion.[1] To demonstrate the societal benefits from such protection, Hustler called a health economics expert who testified that only eight national magazines are willing to publish anti-smoking material. The expert explained that the tobacco industry spends approximately one billion dollars a year to promote cigarette consumption and that most magazines fear economic reprisals in the form of withdrawal or withholding of lucrative advertising accounts. The expert further testified that without anti-smoking advertising, cigarette consumption would increase by forty percent.
The case was submitted to a jury which returned a verdict for Mr. Byrd in the amount of $10,000. The case is now before the court because of an appeal by Mr. Byrd and a cross appeal by Hustler. In light of our resolution of the cross appeal, we need not address the various errors asserted by Mr. Byrd.
*595 "Defamation (libel and slander) may generally be defined as the unprivileged publication of false statements which naturally and proximately result in injury to another." Wolfson v. Kirk, 273 So.2d 774, 776 (Fla. 4th DCA 1973). See also Cooper v. Miami Herald Publishing Co., 159 Fla. 296, 31 So.2d 382, 384 (Fla. 1947). A false statement of fact is the sine qua non for recovery in a defamation action.
The false statement of fact in this case, according to Mr. Byrd, is the implication that he posed for the picture as it appeared in Hustler. To evaluate this contention, we must employ three fundamental principles of libel law. First, a publication must be considered in its totality. "The court must consider all the words used, not merely a particular phrase or sentence." Information Control Corp. v. Genesis One Computer Corp., 611 F.2d 781, 784 (9th Cir.1980). When words and pictures are presented together, each is an important element of what, in toto, constitutes the publication. Articles are to be considered with their illustrations; pictures are to be viewed with their captions; stories are to be read with their headlines. Cooper v. Miami Herald Publishing Co., supra, (headline and article); O'Neal v. Tribune Co., 176 So.2d 535 (Fla. 2d DCA 1965) (headline and article); Jacova v. Southern Radio & Television Co., 83 So.2d 34 (Fla. 1955), (TV news-film with voiceover); Harrison v. Washington Post Co., 391 A.2d 781 (D.C. 1978) (TV news film with voice-over); Bourgeau v. New York News, 5 Med.L.Rprt. 1799 (N.Y. Sup. Ct. 1979) (photograph, caption and article); Shapiro v. Newsday, 5 Med.L.Rprt. 2607 (N.Y. Sup. Ct. 1980) (photograph, headline and article); Roskos v. New York News, 4 Med.L.Rprt. 2148 (N.Y. Sup. Ct. 1979) (photograph, headline and article).
The second and third principles involve the trial court's "prominent function," Wolfson v. Kirk, supra, at 778, in determining whether a libel case should be submitted to a jury. "Where the court finds that a communication could not possibly have a defamatory or harmful effect, the court is justified in either dismissing the complaint for failure to state a cause of action or in granting a directed verdict at the proof stage." Ibid. A correlative principle is that the trial court must evaluate the publication, not by "extremes, but as the common mind would naturally understand it." McCormick v. Miami Herald Publishing Co., 139 So.2d 197, 200 (Fla. 2d DCA 1962). In other words, the statement should be considered in its natural sense without a forced or strained construction.
In the instant case, Mr. Byrd's picture was retouched in a manner which, but for the caption, would have conveyed the impression that he posed for the photograph. The caption, however, plainly indicates that the photograph has been retouched. Viewing the photograph and its caption as a composite, we hold that the common mind could reach but one conclusion: Mr. Byrd did not pose for the picture as it was published in Hustler. The composite does not convey a false impression.
Mr. Byrd's contention at trial was not that the retouching of the picture itself was in any way defamatory, but that the retouching conveyed the false impression that he had posed for the picture and thereby endorsed the view expressed in the publication. We find, to the contrary, that the caption sufficiently clarified the meaning of the picture so that the two, taken together, formed a publication that was neither false nor defamatory. Furthermore, because the invasion of privacy claim was based on the same factual allegations and legal argument, it too must be rejected. Accordingly, the judgment is reversed and the cause is remanded with instructions to enter a judgment in favor of Hustler Magazine, Inc.
DOWNEY and ANSTEAD, JJ., concur.
NOTES
[1] Since the case can be resolved on the first defense, we have not considered the second.