731 So.2d 702 (1999)
Wayne SMITH, Appellant,
v.
CUBAN AMERICAN NATIONAL FOUNDATION, Appellee.
No. 96-2702.
District Court of Appeal of Florida, Third District.
February 3, 1999.
Rehearing Denied June 9, 1999.
*703 Alfredo G. Duran, Miami; Jorden Burt Berenson & Johnson and Richard J. Ovelmen, Miami, for appellant.
G. Luis Dominguez, Miami; George J. Fowler, III, New Orleans, and Ian M. Rodriguez and Rice Fowler, Coral Gables, for appellee.
Before NESBITT, LEVY and SORONDO, JJ.
PER CURIAM.
Wayne Smith appeals the lower court's final judgment and the denial of his motion for judgment notwithstanding the verdict and motion for a new trial. For the reasons which follow, we reverse the final judgment and remand with directions to enter judgment for Smith.
The Cuban American National Foundation ("CANF") filed this suit for defamation against Smith, a professor at Johns Hopkins University, based on a statement Smith made during the course of an interview given for a PBS documentary entitled "Campaign for Cuba." The documentary dealt with the anti-Castro movement in the Cuban-American exile community and described *704 the activities of the CANF, the Cuban American Foundation ("CAF"), and the Free Cuba PAC ("PAC"). The documentary looked at the political influence of these groups, and their role in shaping United States policy toward Cuba.
During the first quarter of the program, the narrator describes the CANF, the CAF, and the PAC as three groups controlled by the same person, then identifies members of Congress which have benefitted from PAC money. The narrator states that the PAC has been the single largest contributor to the campaign of the late United States Congressman Dante Fascell, then explains that "Representative Fascell was also instrumental in the creation of the Congressionally funded National Endowment for Democracy, or NED ... [which has] awarded about nine hundred thousand dollars in grants to the Cuban American National Foundation." Immediately following that statement, the documentary shows a twenty second statement from Mr. Smith which is the subject of this lawsuit:
It's interesting that the National Endowment for Democracy has contributed to the Cuban American National Foundation, and it, in turn, through itsits its own organization, through its PAC, has contributed to the campaign funds of many Congressmen, including some who have been involved with the National Endowment for Democracy, from whence they got the money in the first place, including Dante Fascell.
CANF received a copy of this documentary prior to broadcast, and sent a letter to Professor Smith, threatening a lawsuit. CANF claimed the statement implied that it was involved in criminality or corruption, and in particular, that the statement asserted that CANF used money granted to it by the NED to contribute to the campaigns of those United States Congressmen who provided the NED grants to CANF. Smith claims he was relying upon an article by Professor John S. Nichols entitled "The Power of the Anti-Fidel Lobby," which was published in The Nation magazine. Smith contacted Nichols prior to broadcast, and Nichols assured Smith that his statement was correct. The documentary was broadcast, and CANF filed suit against Smith alone.
At the jury trial of this case, the judge excluded from evidence all portions of the documentary other than the one statement by Smith which CANF alleged to be false and defamatory, and four other clips from the documentary which showed other portions of the interview with Smith. The clips were interspersed throughout the documentary, and amounted to a total of two minutes of air time.
Upon instructing the jury, the trial judge refused to allow an instruction on the defense of "substantial truth." He stated that the Florida Standard Jury Instructions intentionally left the defense out where the plaintiff is a public figure (as it is in this case), because the burden is on the plaintiff to prove falsity. The jury returned a verdict of no compensatory damages, $10,000 in nominal damages, and $30,000 in punitive damages. Smith moved for a JNOV, and for a new trial, and both motions were denied. This appeal follows.
Smith makes two separate and alternative arguments: First, his statements are not false because portions of the video that the jury was not allowed to see make it clear that CANF was not committing any crime, and, second, even if the statement is technically false, it is substantially true because there would not be a different effect in the mind of the average viewer who watched the documentary without the allegedly false statement, as opposed to with the statement.
The court has a "prominent function" in determining whether a statement is defamatory, and if a statement is not capable of a defamatory meaning, it should not be submitted to a jury. See Byrd v. Hustler Magazine, 433 So.2d 593, 595 (Fla. 4th DCA 1983); Owner's Adjustment Bureau, *705 Inc. v. Ott, 402 So.2d 466, 468 (Fla. 3d DCA 1981); Wolfson v. Kirk, 273 So.2d 774, 778 (Fla. 4th DCA 1973); see also Valentine v. C.B.S., Inc., 698 F.2d 430, 432 (11th Cir.1983); Nelson v. Associated Press, Inc., 667 F.Supp. 1468, 1477 (S.D.Fla.1987). Thus, a reviewing court may reverse a jury verdict and instruct the lower court to enter a judgment in favor of the defendant where the statement is not capable of a defamatory effect, i.e., not a "false statement which naturally and proximately result[s] in injury to another." Byrd, 433 So.2d at 595. If the statement is capable of more than one meaning, however, the trier of fact should determine whether the language used was actually understood in its defamatory sense. Wolfson, 273 So.2d at 778.
We conclude that the trial court erred in refusing to show the entire documentary to the jury, thus providing no context for the substance of Smith's statement, and also erred in refusing to give a jury instruction on substantial truth.

Context
The trial judge in this case ruled that everything other than Mr. Smith's statements were irrelevant. Specifically, the judge stated:
I reviewed the tape. I don't see any relevance to most of it and the issues in this case. They go on about all kinds of subjects involved in Cuba that have got nothing to do with this, but I would have no objection, you know, for the argument Mr. Smith is interviewed maybe four or five different places ... and I have no objection to the jury seeing the other interviews of Mr. Smith if you want to.
The trial court abused its discretion in allowing only the interviews of Mr. Smith to be seen by the jury. "[A] publication must be considered in its totality." Byrd, 433 So.2d at 595; see also, Colodny v. Iverson, Yoakum, Papiano & Hatch, 936 F.Supp. 917, 923 (M.D.Fla.1996); Jones v. American Broadcasting Cos., 694 F.Supp. 1542, 1551 (M.D.Fla.1988), judgment vacated on other grounds, 498 U.S. 892, 111 S.Ct. 239, 112 L.Ed.2d 199 (1990). To determine whether a statement is defamatory, it must be considered in the context of the publication. See Raymer v. Double-day & Co., 615 F.2d 241, 244 (5th Cir. 1980); Rush-Hampton Indus., Inc. v. Home Ventilating Inst., 419 F.Supp. 19, 21 (M.D.Fla.1976); Early v. Palm Beach Newspapers, Inc., 354 So.2d 351, 352 (Fla. 1977); Ford v. Rowland, 562 So.2d 731, 735 (Fla. 5th DCA 1990); Hay v. Indep. Newspapers, Inc., 450 So.2d 293, 295 (Fla. 2d DCA 1984); O'Neal v. Tribune Co., 176 So.2d 535, 548 (Fla. 2d DCA 1965); MacGregor v. Miami Herald Publ'g Co., 119 So.2d 85, 88 (Fla. 2d DCA 1960).
This is not the case only, as CANF argues, where the entire publication is alleged to be defamatory, but even where only a portion of the publication is alleged to be defamatory. For example, in Byrd, Hustler magazine published a photograph of the plaintiff. That photograph had been taken from an advertisement, for which the plaintiff posed, for Viceroy cigarettes. 433 So.2d at 594. Hustler magazine had airbrushed out the index finger of the plaintiff who was doing a "V for Victory" sign, thus making it appear as if he were making an obscene gesture to the camera. Id. The caption underneath the picture as published in Hustler made it plain that the photograph had been changed in order to parody the ad. Id. The false statement, according to the plaintiff, was that he would pose for this photograph as it appeared in Hustler. Id. at 595. The court held, however, that the words and picture must be considered together. Id. It stated: "`[T]he court must consider all the words used, not merely a particular phrase or sentence.'" Id. (quoting Information Control Corp. v. Genesis One Computer Corp., 611 F.2d 781, 784 (9th Cir.1980)).
The documentary in this case explains that the three organizations are separate and distinct, although they are controlled by the same individual. Furthermore, the context of the broadcast cannot be irrelevant, *706 because the average viewer would have been watching the entire broadcast, not merely a twenty second clip, or even two minutes of clips interspersed throughout the program. There is no way to determine the "gist" or "sting" of the publication in the mind of the average viewer without examining the statement in context.

Substantial Truth
The trial judge in this case denied Smith's request for a jury instruction on the issue of "substantial truth," finding that the Florida Supreme Court intentionally excluded it from the standard jury instructions on defamation, and that the reason must have been because the public figure plaintiff has the burden of proving falsity. This rationale fails, however, when looking at the case law on substantial truth, which is based on First Amendment principles, as well as the Florida Supreme Court's own language in adopting the standard jury instructions.
Under the substantial truth doctrine, a statement does not have to be perfectly accurate if the "gist" or the "sting" of the statement is true. See Masson v. New Yorker Magazine, 501 U.S. 496, 517, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991); Haynes v. Alfred A. Knopf, Inc., 8 F.3d 1222, 1227 (7th Cir.1993); Nelson v. Associated Press, Inc., 667 F.Supp. 1468, 1477 (S.D.Fla.1987); Woodard v. Sunbeam Television Corp., 616 So.2d 501, 503 (Fla. 3d DCA 1993); McCormick v. Miami Herald Publ'g Co., 139 So.2d 197, 200 (Fla. 2d DCA 1962). A "statement is not considered false unless it `would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" Id.; Woodard, 616 So.2d at 503; Early, 354 So.2d at 352; Bishop v. Wometco Enters., Inc., 235 So.2d 759 (Fla. 3d DCA 1970); Hill v. Lakeland Ledger Publ'g Corp., 231 So.2d 254, 256 (Fla. 2d DCA 1970); Hammond v. Times Publ'g Co., 162 So.2d 681, 682 (Fla. 2d DCA 1964); McCormick, 139 So.2d at 200.
The Florida standard jury instructions on defamation do not explicitly include an instruction on substantial truth. See In re Standard Jury Instructions (Civil Cases 89-1), 575 So.2d 194 (Fla. 1991).[1] It is constitutionally required that a public figure plaintiff prove falsity, Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 775-76, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986), and the standard jury instructions reflect such requirement. The jury instructions do, however, include the language of substantial truth in the instruction for the case of a private plaintiff/non-media defendant. The argument thus proposed by the CANF, and apparently adopted by the trial court, was that substantial truth must not be included as a requirement in a public figure case, and this must be so because the burden is on the plaintiff to prove falsity. There are two reasons why this argument fails.
First, the jury instructions themselves note that the Supreme Court's "approval for publication is not an adjudication on the merits of the form, substance, or correctness of the instructions nor an approval of the notes and comments of the committee." 575 So.2d at 195; see also, Aetna Life Ins. Co. v. Fruchter, 283 So.2d 36, 37 (Fla.1973)("This Court's standard jury instructions[,]... while to be generally followed where applicable, are not intended to change the substantive law applicable to the case."); Lynch v. McGovern, 270 So.2d 770, 771 (Fla. 4th DCA 1972)("the Standard Jury Instructions may be used by trial judges in civil cases where they are applicable. If they are erroneous or inadequate the trial judge may amend them or give some other instruction which adequately *707 instructs the jury in the circumstances of the case."). Thus, the Supreme Court did not abrogate existing law on substantial truth by publication of the standard jury instructions.
Second, and most importantly, subsequent to the publication of the jury instructions was the U.S. Supreme Court decision in Masson v. New Yorker Magazine, 501 U.S. 496, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991), which specifically addresses substantial truth, and brings it into the ambit of constitutional law. 501 U.S. at 517, 111 S.Ct. 2419.
The Supreme Court in Masson dealt with the question of whether altered quotations attributed to plaintiff Masson were defamatory. Id. at 499. In answering this limited question, the Court looked to a "broader principle." Id. at 516. The question of falsity, the Court held, "overlooks minor inaccuracies and concentrates upon substantial truth." Id. It adopted the "different effects" test, and recognized that the definition of actual malice "relies upon this historical understanding" that a statement is not false unless it "`would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" Id. at 517 (quoting R. Sack, Libel, Slander & Related Problems 138 (1980)). It held that a "deliberate alteration" does not equate with falsity "unless the alteration results in a material change in the meaning conveyed by the statement." Id.
Significantly, Masson was a public figure plaintiff. Id. The Court noted that "[i]n this case, of course, the burden is upon the petitioner to prove falsity. The essence of that inquiry, however, remains the same whether the burden rests upon plaintiff or defendant." Id. (citation omitted).
Masson was decided in June 1991, six months after the standard jury instructions were published. Therefore, even assuming that the Supreme Court of Florida had intended to alter the substantive law of defamation by doing away with the substantial truth doctrine, the U.S. Supreme Court's holding in Masson would make any such action unconstitutional as a violation of the First Amendment. This is so whether the plaintiff is a public figure or private individual.[2]
We therefore conclude that the trial court was incorrect in finding that "substantial truth" should not be presented to the jury. According to the U.S. Supreme Court and Florida case law, falsity only exists if the publication is substantially and materially false, not just if it is technically false. Whether this is encompassed as a "defense" or as part of the plaintiff's burden of proving falsity, it should have been explicitly explained to the jury.

Legal Sufficiency
We have thoroughly reviewed this record and have considered it in conjunction with our "context" and "substantial truth" analyses. We conclude that the statement in question "is not susceptible to a defamatory effect." Byrd, 433 So.2d at 595. The documentary clearly explains that the CANF, CAF and PAC are three separate entities. In the course of the documentary, these three entities appear related by leadership and philosophy. In interview clips prior to the Smith statement, members of congress refer to the three groups interchangeably. The documentary notes that these members of congress have received money from the PAC and from CANF members.
The portion of the documentary immediately preceding the subject statement states that "[CANF's] PAC" contributed a great deal of money to Dante Fascell, and *708 Dante Fascell created the NED, which awarded $900,000 in grants to CANF. This essentially implies the same thing that Smith states in the clip which CANF is now suing on. Therefore, we conclude that there would not be a different effect in the mind of the viewer watching the documentary with the Smith statement than there would be without the Smith statement. In either case there would be three separate entities, one of which receives money from NED, the other of which contributes money to congressional candidates, both of which support the same policies, and both of which are run by the same leadership. The failure of the documentary to point out that the CANF passes the grants on to another organization does not make this statement substantially untrue. The NED annual reports show CANF as the recipient of NED grant money. What it then does with the money is irrelevant to what CANF is alleging is a false statement of criminal activity: As long as the PAC is understood as a separate entity, there is no longer an implication of criminal acts.
Accordingly, we reverse the final judgment entered below and remand with instructions to enter a judgment in favor of Smith.
NOTES
[1] We note that these particular jury instructions were criticized as being an incorrect statement of the law, both by dissenting Justice Barkett, 575 So.2d at 202, and in the Florida Bar Journal, shortly after publication, Thomas R. Julin, Florida's not so Standard Defamation Jury Instructions, 65 Fla. B.J. 15 (June 1991)(criticizing the instructions as being inaccurate on five different points of defamation law).
[2] We disagree with the argument that public figures under the First Amendment should shoulder a lesser burden than private plaintiffs on this issue, as CANF is essentially arguing. "The burden upon public [figures] is greater because the public's valid interest in their conduct and behavior requires the news media to publish more about them, thus giving more chances for honest error." Times Publ'g Co. v. Huffstetler, 409 So.2d 112, 114 (Fla. 5th DCA 1982). Turning this burden around flies in the face of First Amendment law.