[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11794
Non-Argument Calendar
_____

D.C. Docket No. 6:18-cv-00466-PGB-TBS

NIKLESH PAREKH,

                                        Plaintiff-Appellant,

versus

CBS CORPORATION,
BRIAN CONYBEARE,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 19, 2020)

Before JORDAN, NEWSOM, and BRANCH, Circuit Judges.

PER CURIAM:

Niklesh Parekh, proceeding *pro se*, appeals the district court's dismissal of his complaint for defamation against CBS Corporation and reporter Brian Conybeare. He also appeals the district court's denial of his motion to amend the judgment and award of attorneys' fees to CBS and Mr. Conybeare under Florida's anti-SLAPP statute, Fla. Stat. § 768.295. After careful review of the parties' briefs and the record, we affirm.

**I**

**A**

This case arises out of a scam orchestrated by Mr. Parekh's ex-girlfriend, Vedoutie Hoobraj a/k/a Shivonie Deokaran. Ms. Deokaran pretended to have cancer and solicited funds to support her purported medical treatment. For instance, among other fundraising schemes, she created a "GoFundMe" web site, which described the "unexpected financial burden" that her "fight with cancer has brought . . . to her and her family[.]" D.E. 1-1 at 3. She raised approximately $50,000 in donations from members of her community in Ardsley, New York, and elsewhere based on these representations. But rather than using the funds for medical care, she "used the donations for her ordinary living and business expenses[.]" *Id.* at 2.

In February of 2016, Mr. Parekh found out that Ms. Deokaran lied about having cancer. After learning that her illness was a farce, he contacted local

2

authorities and spoke to the media—including interviewing with CBS reporter Mr. Conybeare—to set out the truth.

On April 2, 2017, CBS published a broadcast and accompanying online news article about the scam. The article, written by Mr. Conybeare, is titled "Ex-Boyfriend Says Westchester Woman Lied About Having Cancer in Scam." D.E. 19-2. The article and the broadcast are substantially identical, so we will refer to them collectively as the "news report."[1]

The news report states that Mr. Parekh "claim[ed] he had no idea she made the whole thing up" and quotes him stating: "Shivonie has lied to me; has lied to my friends, my family, her kids, my kids!" *Id.* at 1–2. It further reports that "[d]espite Parekh's claim he was fooled, Ardsley police confirmed they are investigating both him and Deokaran in the cancer fraud probe." *Id.* at 2. In addition, it quotes a victim of the scam, Rob Wootten, stating that he "wants the couple—both of them—to be charged and own up to the scam." *Id.*

**B**

---

[1] The broadcast and accompanying article were attached as exhibits to the defendants' motion to dismiss and may be viewed at https://newyork.cbslocal.com/2017/04/02/westchester-cancer-scam-allegations/. Mr. Parekh incorporated the broadcast and article by reference in his complaint, which provides the web address. *See* D.E. 1 ¶ 14. *See also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (explaining that a document is incorporated by reference to a complaint, and therefore may be considered in reviewing a motion to dismiss, if it is "(1) central to the plaintiff's claim and (2) undisputed").

On March 28, 2018, Mr. Parekh sued CBS and Mr. Conybeare for defamation. His claim is based on the following two parts of the news report, which he asserts falsely imply that he was in on Ms. Deokaran's ruse.

First, the news report states:

> Parekh was once Deokaran's staunchest supporter. *They suddenly moved to Florida last year when people started getting suspicious*, but Parekh said he now knows the truth and their relationship is over.

*Id*. (emphasis added). Mr. Parekh alleged that contrary to this statement, he told Mr. Conybeare "that the reason [he] moved to Florida was not because of any suspicion within the community but rather that [Ms. Deokaran] stated that she was given 18 months to live and New York was too cold for her and [they] had to move to Florida." D.E. 1 ¶ 23.

Second, the news report states:

> Parekh said he has nothing to hide. When he started asking questions, he said Deokaran invented a fake cancer doctor whose name resembled a real doctor at the Memorial Sloan Kettering Cancer Center – even sending typo-filled emails to prove her diagnosis.
>
> *    *    *
>
> Memorial Sloan Kettering Cancer Center confirmed that *the doctor named in the emails never worked there*, and in fact, *no doctor by that name even has a license in the state of New York*.

D.E. 19-2 at 2 (emphasis added).

Mr. Parekh alleged that the latter part of this statement is false, and that there is in fact a doctor with the name used in the emails associated with Memorial Sloan

4

Kettering Cancer Center.  He attached as an exhibit a sealed complaint filed in the U.S. District Court for the Southern District of New York charging Ms. Deokaran with wire fraud.  The sealed complaint includes an FBI agent's sworn statement that "a doctor bearing the same name as the name in the Doctor-1 Gmail Account works as an oncologist at Sloan Memorial Kettering Center in New York," but based on the agent's interview of that doctor, "the doctor did not recall ever meeting or having any contact with" Ms. Deokaran and "never owned or used the Doctor-1 Gmail Account."  *See* D.E. 1-1 ¶ 13.

Mr. Parekh also alleged that CBS and Mr. Conybeare published pictures of him with Ms. Deokaran, despite his request not to post photos of them together.  *See* D.E. 1 ¶ 18.  He claims that the pictures "portray a very different picture about [him] in the public's eye[.]"  *Id.* ¶ 19.

CBS and Mr. Conybeare moved to dismiss the complaint for failure to state a claim.  In the same motion, they also requested attorneys' fees and costs pursuant to Florida's anti-SLAPP statute, Fla. Stat. § 768.295(4).

The district court granted the motion, dismissing Mr. Parekh's complaint with prejudice.  In doing so, the district court explained that the first statement—regarding the move to Florida—was not reasonably capable of defamatory meaning when read in context.  The district court further explained that the second statement—regarding Ms. Deokaran falsifying the existence of a doctor—could not form the basis for a

5

defamation claim because it was not "of and concerning" Mr. Parekh. In addition, the district court denied leave to amend the complaint because amendment would be futile, and awarded fees under Florida's anti-SLAPP statute because the suit was "without merit" and the news report addressed a "public issue." D.E. 104 at 10.[2]

Mr. Parekh moved to alter or amend the judgment pursuant to Rule 59(e), which the district court construed as a motion for reconsideration. The district court denied the motion because Mr. Parekh did "nothing more than re-argue the positions he previously set forth[.]" D.E. 127 at 2.

This appeal followed.

## II

As a preliminary matter, CBS and Mr. Conybeare argue that the scope of this appeal is limited to the district court's denial of Mr. Parekh's Rule 59(e) motion based on the language in his notice of appeal. Mr. Parekh's notice of appeal states, in pertinent part, that he is appealing "from the final judgment entered by [the district court] on April 12th, 2019 in denying Plaintiffs' 59(e) Motion to Alter or Amend Judgment, which this court construed as a motion for reconsideration from the courts order granting defendants motion to dismiss with Prejudice on January 9th, 2019 . . ." D.E. 130.

---

[2] To the extent that Mr. Parekh also pled a claim for intentional infliction of emotional distress, the district court dismissed that claim with prejudice too. That claim is not at issue in this appeal.

A notice of appeal must "designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B). We "liberally construe" the requirements of Rule 3, and "we do not narrowly read the notice of appeal where the defect in the notice of appeal did not mislead or prejudice the respondent." *Nichols v. Ala. State Bar*, 815 F.3d 726, 730–31 (11th Cir. 2016) (citations and internal quotation marks omitted) (entertaining jurisdiction over the plaintiff's appeal even though his notice of appeal did not specify which orders he intended to appeal because it was apparent from the record which orders he was challenging and the defendant had an opportunity to brief the issues).

Given this standard—and that we liberally construe *pro se* filings, *see Bellizia v. Fla. Dep't of Corr.*, 614 F.3d 1326, 1329 (11th Cir. 2010)—we have jurisdiction to review both the dismissal of Mr. Parekh's complaint and the denial of his Rule 59(e) motion. His notice of appeal references both orders, and his initial brief makes clear that he intends to appeal both rulings, as well as the award of attorneys' fees. CBS and Mr. Conybeare are not prejudiced by any lack of clarity in the notice of appeal, as they briefed each of these issues in their answer brief. We therefore address each of Mr. Parekh's arguments: that the district court erred in dismissing his defamation claim, denying him leave to amend, denying his Rule 59(e) motion, and awarding attorneys' fees to CBS and Mr. Conybeare.

## III

## A

We review *de novo* the district court's dismissal of Mr. Parekh's defamation claim. *See Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1169 (11th Cir. 2014). We accept the factual allegations in the complaint as true and construe them in the light most favorable to Mr. Parekh. *See id.*

Under Florida law, "[d]efamation has the following five elements: (1) publication; (2) falsity; (3) [the] actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) [the] statement must be defamatory." *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).

A statement is defamatory if it "tends to harm the reputation of another by lowering him or her in the estimation of the community or, more broadly stated, . . . exposes a plaintiff to hatred, ridicule, or contempt or injures his business or reputation or occupation." *Id.* at 108–09. "To determine if a statement is defamatory, it must be considered in the context of the publication." *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 705 (Fla. 3d DCA 1999). *See also Byrd v. Hustler Magazine, Inc.*, 443 So. 2d 593, 595 (Fla. 4th DCA 1983) ("The court must consider all the words used, not merely a particular phrase or sentence.") (citation and internal

8

quotation marks omitted).  Whether a statement is defamatory is a question of law.  *See Turner v. Wells*, 879 F.3d 1254, 1262–63 (11th Cir. 2018).

As discussed earlier, the first challenged statement in the news report provides that Mr. Parekh and Ms. Deokaran "*suddenly moved to Florida last year when people started getting suspicious*, but Parekh said he now knows the truth and their relationship is over."  D.E. 19-2 at 2 (emphasis added).  We agree with the district court that, read in context, this statement is not defamatory.

Mr. Parekh argues that stating that they moved to Florida "when people started getting suspicious" implies that he was a part of the scam.  But the second half of the sentence—which states that Mr. Parekh "*now knows the truth* and their relationship is over"—makes clear that he did not know that Ms. Deokaran was lying about having cancer at the time they moved, and that he terminated their relationship upon finding out the truth.  As the district court noted, the news report also repeatedly quotes Mr. Parekh's assertions that Ms. Deokaran lied to him.  Indeed, it states at the outset that Mr. Parekh claims "he had no idea."  D.E. 19-2 at 1.  It then quotes him throughout the report stating that "Shivonie has lied to me," that "[s]he's been shaving her head, she's been shaving her eyebrows, and [he] had no idea that's what she was doing," and that "[b]ecause of Shivonie and her lies, [his] whole life is upside down."  *Id*. at 2.  Given this context, an ordinary reader would not understand the first challenged statement to have a defamatory meaning.

9

Mr. Parekh also challenges the statement that "Memorial Sloan Cancer Center confirmed that the doctor named in the emails never worked there, and in fact, no doctor by that name even has a license in the state of New York." D.E. 19-2 at 2. The district court reasoned that this statement "does not concern" Mr. Parekh, as it merely "concerns whether Deokaran falsified the existence of a doctor who worked at Memorial Sloan Kettering Cancer Center." D.E. 104 at 6. The district court therefore concluded that it could not form the basis of Mr. Parekh's defamation claim, as a defamatory statement must be "of and concerning" the plaintiff to be actionable. *See Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 802 (Fla. 1st DCA 1997).

Mr. Parekh argues that this statement is about him, as it suggests that he lied when he "said Deokaran invented a fake cancer doctor whose named resembled a real doctor at the Memorial Sloan Kettering Cancer Center," D.E. 19-2 at 2, sending him emails from the purported doctor to confirm her diagnosis. We take Mr. Parekh's point that the statement pertains to whether he was truthful when he stated that a doctor "whose name resembled a real doctor" sent him emails regarding Ms. Deokaran's diagnosis. But we are "free to affirm the district court's dismissal on any ground that is supported by the record." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016) (citation and internal quotation marks omitted). We

conclude that the district court's dismissal of the claim based on this statement is correct because the statement is not defamatory.

The news report states that Mr. Parekh said Ms. Deokaran "invented a fake cancer doctor whose name *resembled* a real doctor . . ." D.E. 19-2 at 2 (emphasis added). Even if there was no doctor working at the cancer center with the *exact* same name used in the emails, Mr. Parekh's statement is true so long as there was a doctor with a *similar* name working at the cancer center. The news report thus does not imply that he was lying. Instead, an ordinary reader would interpret it to mean that Ms. Deokaran duped Mr. Parekh into believing that she was sick by inventing a doctor with a name that resembled the name of a real doctor.

We acknowledge that Mr. Parekh plausibly alleged that the statement that there was no doctor at the cancer center with the name used in the emails—and no doctor by that name licensed in New York—is inaccurate. The affidavit from the FBI agent attached to the complaint indicates that there was indeed a doctor with that name. But "[u]nder the substantial truth doctrine, a statement does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true." *Smith*, 731 So. 2d at 706 ("A statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.") (citations and internal quotation marks omitted). Even if this statement is false, it is not actionable because it is not defamatory. We affirm the district

11

court's dismissal of Mr. Parekh's complaint for defamation, as he did not plausibly allege that either statement in the news report is defamatory.

**B**

We now turn to whether the district court erred in denying Mr. Parekh leave to amend. We generally review the denial of leave to amend a complaint for abuse of discretion, but when the denial is based on futility, we review *de novo* "because it is concluding that as a matter of law an amended complaint would necessarily fail." *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1264 (11th Cir. 2011). Although a *pro se* litigant must generally be given an opportunity to amend his complaint, a district court need not allow an amendment that would be futile. *See Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Id.*

We agree with the district court that leave to amend would be futile, because no amendment could correct the deficiency that the statements in the news report are not defamatory as a matter of law. Mr. Parekh argues that if he were granted leave to amend, he could state a cause of action for defamation by implication. Defamation by implication arises where "the defendant juxtaposes a series of facts so as to imply a defamatory connection between them," even though the particular facts stated are true. *See Rapp*, 997 So. 2d at 1108. It may also arise where the

12

defendant "creates a defamatory implication by omitting facts[.]" *Id.* In other words, it allows "impos[ing] liability upon the defendant who has the details right but the 'gist' wrong." *Id.*

As explained earlier, despite omitting that Mr. Parekh moved to Florida because Ms. Deokaran said New York was too cold for her, the "gist" of the news report is still true—Mr. Parekh did not know that Ms. Deokaran's cancer was a farce until after they moved to Florida, and when he found out, he terminated their relationship. And although the news report did not mention that an FBI agent interviewed a doctor with the same name as that used in the emails, omission of this fact does not create a defamatory implication about Mr. Parekh.

Nor could the pictures of Mr. Parekh with Ms. Deokaran form the basis of a defamation by implication claim. Mr. Parekh argues that including pictures of them together created a false, defamatory implication that he was still affiliated with Ms. Deokaran. But the pictures must also be viewed in the context of the entire news report, which makes clear that they are no longer together. *See Byrd*, 433 So. 2d at 595 ("When words and pictures are presented together, each is an important element of what, *in toto*, constitutes the publication. Articles are to be considered with their illustrations; pictures are to be viewed with their captions; stories are to be read with their headlines."). The headline refers to Mr. Parekh as Ms. Deokaran's "ex-

13

boyfriend," and the news report states that "their relationship is over." D.E. 19-2 at 1–2.

In arguing that the news report damaged his reputation, Mr. Parekh also notes that the report states: "Ardsley police confirmed they are investigating both him and Deokaran in the cancer fraud probe." But he does not assert that this statement is false, or that he would amend the complaint to state a claim based on this statement. He also says that the news report quotes a victim, Mr. Wootten, stating that he "wants the couple—both of them—to be charged and own up to the scam." But he does not argue that he would amend to state a claim based on this statement either. Nor could he, as Mr. Wootten's quote is a non-actionable expression of opinion. *See Hay v. Indep. Newspapers, Inc.*, 450 So. 2d 293, 295 (Fla. 2d DCA 1984) (explaining that expressions of opinion are not actionable).

Accordingly, we affirm the denial of leave to amend the complaint, as the proposed amendment would be futile.

## C

We review the denial of a Rule 59(e) motion for an abuse of discretion. *See Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007). "The only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact." *Id.* (alterations, citation and internal quotation marks omitted).

14

The district court did not abuse its discretion in denying Mr. Parekh's Rule 59(e) motion, as he did not point to any manifest errors of law or fact. His motion repeated arguments already made and rejected, and the exhibits do not change the analysis of his claims. Although Mr. Parekh contends that the exhibits include text messages between himself and a customer who will no longer do business with him after reading the news report, that does not alter the analysis of how an ordinary reader would interpret the report. *See Rubin v. U.S. News & World Report, Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001) (applying Florida law) (noting that in evaluating whether a statement is defamatory, the question is how it would be "understood by the average reader").[3]

## D

We review *de novo* the district court's interpretation and application of a statute, such as Florida's anti-SLAPP statute. *See Tobinick v. Novella*, 848 F.3d 935, 943 (11th Cir. 2017). Florida's anti-SLAPP statute prohibits a person from filing a cause of action "against another person or entity without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue[.]" Fla. Stat. § 768.295(3). It provides that "[t]he

---

[3] We are also not persuaded by Mr. Parekh's argument that the district court erred by striking his motions to supplement his Rule 59(e) motion, which also repeated arguments previously raised. Mr. Parekh did not obtain leave to submit these filings as required by the district court's local rules. *See* M.D. Fla. L. R. 3.01(c).

15

court shall award the prevailing party reasonable attorney fees and costs incurred in connection with a claim that an action was filed in violation of this section."  Fla. Stat. § 768.295(4).

Based on the plain language of the statute, the district court properly awarded fees to CBS and Mr. Conybeare under this provision.  Mr. Parekh's suit was "without merit" for the reasons explained earlier, and it arose out of the defendants' protected First Amendment activity—publishing a news report on a matter of public concern. *See* Fla. Stat. § 768.295(3).

Mr. Parekh argues, for the first time on appeal, that Florida's anti-SLAPP statute should not be applied in federal court.  He forfeited this argument, however, by not raising it before the district court.  *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (noting that although *pro se* pleadings are liberally construed, "issues not raised below are normally deemed waived").  *See also Tobinick*, 848 F.3d at 944 (holding that the appellants "waived their challenge to the district court's application of California's anti-SLAPP statute based on the Erie doctrine" because they did not raise the issue before the district court).  He also forfeited his argument that New York rather than Florida law should apply—and therefore Florida's anti-SLAPP statute is inapplicable—as he did not raise it until his reply brief.  *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) ("[W]e do not address arguments raised for the first time in a *pro se* litigant's reply brief.").

16

## IV

For the foregoing reasons, we affirm.

**AFFIRMED.**