DAMOORGIAN, J.
 

 Don King Productions, Inc. and Don King (collectively “Don King” or “King”) appeal a final summary judgment entered in favor of ESPN, Inc., ESPN Productions, Inc. and ESPN Classic, Inc. We affirm the summary judgment on King’s defamation and false light claims because the trial court correctly determined that Don Bang failed to present record evidence that a genuine issue of material fact exists which would allow a jury to find, by clear and convincing evidence, that ESPN published the statements in question with actual malice.
 
 See Mile Marker, Inc. v. Petersen Publ’g, L.L.C.,
 
 811 So.2d 841, 846-47 (Fla. 4th DCA 2002).
 

 Don King filed an action for defamation and false light invasion of privacy
 
 [1]
 
 based on several statements made during an ESPN Sports Century television program about his life and career. The program contained approximately twenty-two minutes of content, consisting principally of tracks, interviews, clips, and photos. ESPN hired Broadway Video to produce the program.
 

 At issue in this appeal are five of the statements made during the course of the Sports Century program, which King alleges are actionable defamatory statements. Three of those statements were spoken by Don Elbaum, a boxing promoter who has known King for over thirty years. Elbaum was also the source of the fourth statement, which was spoken by the program’s host, Chris Fowler. The fifth statement was spoken by Jack Newfield, a writer who had covered King for several years, and whose works on King included numerous newspaper articles, a book enti-
 
 *43
 
 tied
 
 Only in America,
 
 and a “Frontline” documentary on the Public Broadcasting Service. The contents of the five statements at issue consist of the following:
 

 1. Elbaum indicated that King organized a benefit exhibition fight for Forest City Hospital. The hospital only received $1,500 out of the $85,000 in ticket sales.
 

 2. Elbaum described a private conversation he had with Meldrick Taylor in which they discussed Taylor being owed $1,300,000 for a fight, and King giving Meldrick a check for only $300,000.
 

 3. Elbaum asserted that King threatened to have Meldrick Taylor killed.
 

 4. Elbaum stated that King convinced doctors to invest $250,000 in a movie about his life that was never made.
 

 5. Newfield described an encounter he had with King at a press conference where King went crazy and threatened to kill him.
 

 King declined ESPN’s attempts to interview him for the program.
 

 “A common law claim for defamation requires the unprivileged publication (to a third party) of a false and defamatory statement concerning another, with fault amounting to at least negligence on behalf of the publisher, with damage ensuing.”
 
 Mile Marker,
 
 811 So.2d at 845. A public figure bringing a defamation action must prove more than mere negligence on the part of the publisher; he must prove that the publisher acted with actual malice.
 
 [2]
 

 New York Times Co. v. Sullivan,
 
 376 U.S. 254, 279-80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964);
 
 Mile Marker,
 
 811 So .2d at 845.
 

 In
 
 New York Times,
 
 the Supreme Court defined actual malice as knowledge that the statement was false or reckless disregard of whether it was false or not. 376 U.S. at 279-80, 84 S.Ct. 710. The Court further clarified this definition in
 
 St. Amant v. Thompson,
 
 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968):
 

 [R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.
 

 Recklessness may be found where “there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports.”
 
 Id.
 
 at 732, 88 S.Ct. 1323. Under these circumstances, the publisher’s profession that he published the defamatory statements in good faith is generally insufficient to obtain a summary judgment.
 
 Id.
 

 The trial court granted summary judgment in favor of ESPN after finding that King had failed to establish the falsity of ESPN’s statements and that ESPN published the statements with actual malice. We direct our attention only to the second basis for summary judgment and hold that summary judgment was proper because there is no record evidence sufficient to satisfy this court that a jury could find, by clear and convincing evidence, that ESPN acted with actual malice in publishing the five statements in question.
 
 [3]
 

 
 *44
 
 Our review of an order granting summary judgment is de novo.
 
 Seropian v. Forman,
 
 652 So.2d 490, 494 (Fla. 4th DCA 1995) (“In cases involving an alleged defamatory falsehood about a public [figure], an appellate court is required to conduct its own independent review of the evidence and determine for itself whether the evidence is sufficient to meet the exacting requirements of the First Amendment.”). We must draw all reasonable inferences in favor of King, the nonmoving party,
 
 see Martinez v. Fla. Power & Light Co.,
 
 863 So.2d 1204, 1205 (Fla.2003), but our review is guided by the rule that summary judgments are to be more liberally granted in defamation actions against public-figure plaintiffs,
 
 see Dockery v. Fla. Democratic Party,
 
 799 So.2d 291, 294 (Fla. 2d DCA 2001). And, on a motion for summary judgment in a public-figure defamation case, the burden is on the plaintiff to “present
 
 record evidence
 
 sufficient to satisfy the court that a genuine issue of material fact exists which would allow a jury to find by clear and convincing evidence the existence of actual malice on the part of the defendant.”
 
 Mile Marker,
 
 811 So.2d at 846-47.
 

 King contends that the record demonstrates a material issue of fact regarding ESPN’s actual malice because there were obvious reasons for ESPN to doubt the veracity of Elbaum and Newfield, and the veracity of their statements. He points to several parts of the record which, he asserts, show actual malice either individually or in combination.
 

 First, we focus on King’s argument that ESPN harbored ill will towards him and intended to portray him in a negative light. In support, King directs us to several emails exchanged between ESPN producers. In these emails, the producers requested more ominous music and referred to King as a “greedy conniver.” There were also emails exchanged between the ESPN producers and producers from Broadway Video, in which the ESPN producers requested the Broadway Video producers portray King as a “huckster,” “thug,” and an “evil mob connected guy.” Finally, King points to several notations on the script where ESPN producers allegedly commented that King should be portrayed as “more evil,” “greedy,” and “engaging in criminal activities.”
 

 Ill will is different than actual malice under the defamation test.
 
 See Palm Beach Newspapers, Inc. v. Early,
 
 334 So.2d 50, 52 (Fla. 4th DCA 1976);
 
 see also Beckley Newspapers Corp. v. Hanks,
 
 389 U.S. 81, 82, 88 S.Ct. 197, 19 L.Ed.2d 248 (1967) (stating that the jury instruction that actual malice was established if the jurors found that the editorials were published with ill will was a incorrect statement of the law). Thus, a showing of ill will, alone, cannot establish actual malice. However, ill will or motive, when combined with other evidence, may amount to actual malice.
 
 Harte-Hanks Commc’ns, Inc. v. Connanghton,
 
 491 U.S. 657, 668, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989) (noting that a plaintiff may prove the defendant’s state of mind through circumstantial evidence, such as evidence of motive);
 
 Perk v. Reader’s Digest Ass’n,
 
 931 F.2d 408, 411 (6th Cir.1991) (stating that a plaintiff “can present proof of malice in the form of cumulative circumstantial evidence, which is often the only way to prove malice in libel cases”). Despite the relevance of ill will and motive, “courts must be careful not to place too much reliance on such factors.”
 
 Harte-Hanks Commc’ns,
 
 491 U.S. at 668, 109 S.Ct. 2678.
 

 Any ill will or evil intent in the emails and production notations to which King directs our attention does not amount to actual malice. It seems clear that ESPN intended to produce a program with
 
 *45
 
 a particular theme, and used production techniques such as ominous music to enhance the program’s entertainment value. It may also be true that ESPN chose to present the negative aspects of King’s life without balancing those with more positive images and stories. However, nothing in the record shows that ESPN purposely made false statements about King in order to bolster the theme of the program or to inflict harm on King. An intention to portray a public figure in a negative light, even when motivated by ill will or evil intent, is not sufficient to show actual malice unless the publisher intended to inflict harm through knowing or reckless falsehood. See
 
 Garrison v. Louisiana,
 
 379 U.S. 64, 73, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964);
 
 see also Masson v. New Yorker Magazine, Inc.,
 
 501 U.S. 496, 510, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (“Actual malice under the
 
 New York Times
 
 standard should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will.”). Furthermore, ESPN was not required to present positive statements about King to balance any negative statements, or to search until it found someone who would defend King.
 
 See Levan v. Capital Cities/ABC, Inc.,
 
 190 F.3d 1230, 1243 (11th Cir.1999).
 

 Next, King asserts that ESPN ignored the obvious reasons to doubt Elb-aum’s and Newfield’s statements. As to Elbaum, King asserts that ESPN knew or should have known that Elbaum was convicted of tax fraud in the early 1990s and that there was animosity between Elbaum and King. As such, ESPN should have done more to verify Elbaum’s statements. Unlike Elbaum, King does not question Newfield’s general credibility, but asserts that ESPN had reason to doubt the veracity of Newfield’s statement that King threatened to kill him. King points out that ESPN’s producers had a copy of the PBS Frontline videotape which shows some part of the confrontation between King and Newfield, and which does not contain any evidence of a death threat.
 

 This evidence, even taken as a whole, is not sufficient to prove, by clear and convincing evidence, that ESPN acted with actual malice in publishing the statements about King. King has not presented any evidence that ESPN in fact doubted Elb-aum’s credibility or the veracity of New-field’s statement.
 

 The evidence that King relies on to show that ESPN should have doubted Elbaum’s credibility is neither clear nor convincing. Assuming ESPN knew of Elbaum’s tax fraud conviction, or had any duty to perform a criminal background check on him, a single criminal conviction more than a decade before publication does not require a publisher to question a source’s credibility on all matters. The alleged contentious relationship between King and Elbaum is more suspicious, but is still insufficient to show ESPN acted with reckless disregard for the truth. The event that sparked the animosity between King and Elbaum occurred in 1973; King presented no evidence that this event created long-lasting tension between himself and Elbaum.
 

 Regarding Newfield, although the PBS Frontline video does not show King threatening Newfield’s life, Newfield’s account of the confrontation in
 
 Only in America
 
 supports, at the very least, his perception that King threatened his life. In the book, Newfield recounted King’s long tirade against him, calling him “dirt,” “a scumbag,” and other such insults. After King walked away from Newfield, someone associated with King approached Newfield and whispered, “Better watch your back, Jack. This is Don’s town.” It was not unreasonable for Newfield to interpret this comment as a threat, nor did ESPN have reason to doubt Newfield’s perception of
 
 *46
 
 the comment. Though the PBS video clip did not show these events, ESPN producers testified at deposition that they believed the events may have occurred off-camera. This is a reasonable conclusion. Moreover, King declined ESPN’s attempts to interview him for the Sports Century program, and thus provide ESPN with his version of the confrontation. King is under no obligation to participate in the production; however, the fact that ESPN did not have access to King’s version of the events is a factor in support of ESPN’s reliance on Newfield’s account.
 

 Next, King contends that ESPN should have conducted a more searching investigation into the challenged statements, such as interviewing additional sources to verify the statements. By not doing so, King asserts that ESPN deviated from accepted standards of journalism. The law is well established that the failure to investigate, without more, does not constitute actual malice.
 
 See Palm Beach Newspapers,
 
 334 So.2d at 52-53;
 
 St. Amant,
 
 390 U.S. at 733, 88 S.Ct. 1323. Although a publisher’s departure from accepted standards of journalism is not entirely irrelevant, “[ajctual malice requires more than a departure from reasonable standards of journalism.”
 
 Levan,
 
 190 F.3d at 1239. Here, ESPN interviewed people with direct knowledge of the events in question. ESPN also tried to interview King, to no avail. There were no obvious reasons for ESPN to doubt the challenged statements, so its failure to conduct a more searching investigation does not show actual malice.
 

 After reviewing the summary judgment evidence and the arguments of counsel, we conclude that the trial court did not err in granting summary judgment on King’s defamation claim. ESPN did not act recklessly by relying on statements made by Elbaum and Newfield. Moreover, although it exercised editorial discretion by creating a particular theme for its program, there is no evidence that it published the challenged statements with knowledge of their falsity or with any serious doubt as to their truth. Thus, King did not meet his burden of presenting record evidence sufficient to satisfy the trial court that a genuine issue of material fact exists which would allow a jury to find actual malice by clear and convincing evidence.
 

 Affirmed.
 

 WARNER and LEVINE, JJ., concur.
 

 [1]
 

 . King does not contest the summary judgment on his false light invasion of privacy claim, presumably because of the Florida Supreme Court's holding in
 
 Jews for Jesus, Inc.
 
 v.
 
 Rapp,
 
 997 So.2d 1098, 1114 (Fla.2008) (declining to recognize a claim for false light invasion of privacy separate from defamation).
 

 [2]
 

 . It is undisputed that King is a public figure.
 

 [3]
 

 . Although we do not agree with the trial court's conclusion that none of the five challenged statements were false, falsity alone is insufficient to make a claim for defamation.
 
 See Mile Marker,
 
 811 So.2d at 845.