# Third District Court of Appeal

## State of Florida

Opinion filed May 1, 2019.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D18-270
Lower Tribunal No. 16-6319
_____

## Robert Cornfeld, etc.,
Appellant,

vs.

## Plaza of the Americas Club, Inc., et al.,
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Thomas J. Rebull, Judge.

Saul Ewing Arnstein & Lehr LLP, and Franklin L. Zemel, Alan R. Poppe and Ariel R. Deray (Fort Lauderdale), for appellant.

Vernis & Bowling of Miami, P.A., and Evelyn Greenstone Kammet and Daniel E. Davis, for appellees.

Before LOGUE, SCALES and HENDON, JJ.

HENDON, J.

Robert Cornfeld ("Cornfeld"), derivatively as a shareholder and on behalf of Plaza of the Americas Club, Inc., appeals from the trial court's final order dismissing with prejudice his amended shareholder derivative suit against Plaza of the Americas Club, Inc. and its directors, Narcisco Alberti, Nila Fernandez, Jospeh Chavez, Emelina Foyo, Mercy Rodriguez, Marta Arriola, Alba Garcia, Jesus Garcia, and Ana M. Imery, individually (collectively, the "Club"). We affirm.

Procedural history:

The Club is a not-for-profit corporation that owns and operates the Plaza of the Americas condominium complex. Cornfeld[1] owns one of the condominium units and brought this shareholder derivative action pursuant to section 617.0740, Florida Statutes (2016), alleging the Club breached its fiduciary duty to the unit owners and asking for injunctive relief. The suit was based on Cornfeld's allegations that the Club wrongfully refused to accept an offer of $2.5 million to purchase a parcel of Club property, and refused to assert a claimed legal right

---

[1] Cornfeld is the owner/manager of a privately held, family owned real estate investment and management company known as "The Cornfeld Group." The Cornfeld Group umbrella consists of various corporations and limited liability companies which are either owned or managed by Dr. Cornfeld himself or by his immediate family members. The Cornfeld Group's portfolio includes the Newport Beachside Hotel and Resort ("Newport ") located across the street from the Plaza of the Americas (Club) on Collins Avenue. Newport currently leases the "boatyard area" from the Club for parking for the Newport. The area adjacent to the boatyard and alley is used for ingress and egress to the boatyard and the neighboring RK-owned shopping center. This property is the primary subject of the derivative action.

against RK Centers, LLC (hereinafter "RK"), which is the shopping center adjacent to the condominiums, for an alleged contractual breach by RK to repair damages to a sewer main. The Club filed a motion to dismiss, arguing (1) Cornfeld lacked standing to bring the derivative action because he failed to serve a pre-suit demand pursuant to section 617.07401, Florida Statutes (2016); (2) Cornfeld's claims are barred because the Club is protected by the business judgment rule; (3) Cornfeld failed to join RK as an indispensable party; and (4) Cornfeld failed to state a cause of action for injunctive relief.

After the hearing on the Club's motion to dismiss, the trial court deferred ruling and asked the parties how they wanted to proceed, tracking section 617.07401. That statute provides that, in order to determine whether maintenance of the derivative action is in the best interest of the corporation, the corporation can proceed in one of three ways: (1) a majority vote of independent directors at a Board meeting; (2) a majority vote of a committee of two or more independent directors appointed by a majority vote at a Board meeting; or (3) a panel of one or more independent persons appointed by the court upon motion by the corporation. The Club chose the third option, and the trial court appointed – by <u>unopposed</u> order – attorney Jordana Goldstein as the independent investigator. Goldstein took five months to review the allegations.[2]

---

[2] Goldstein's investigation included reviewing preliminary position statements submitted by the parties and hundreds of pages of supporting documents, and

3

After her investigation concluded, Goldstein filed a forty-four (44) page report with the trial court, exclusive of several hundred pages of exhibits. She concluded that maintaining the derivative action is not in the best interest of the Club. Goldstein recommended the trial court dismiss the action because: (1) Cornfeld does not adequately represent the interests of the Club's unit owners because of his personal motivation for filing the suit, which is contrary to the interests of the Club membership generally; (2) the Board members' decisions were reasonable, were guided by legal advice throughout, and are protected by the business judgment rule, and the board members are thus immune from the lawsuit; and (3) the litigation is barred because Cornfeld failed to serve a statutorily required pre-suit demand on the Board.

Cornfeld filed his objections to the report. He asserted that the report was biased and conducted in bad faith, that Goldstein failed to interview the owner of RK, improperly focused on Cornfeld's personal business motivations for filing the derivative suit, and had no reasonable basis to explain why the Club failed to sue

reviewing all record activity including pleadings and discovery. She conducted her own independent research, and spent sixty hours interviewing eight witnesses (including the Club's property manager, board members, counsel, Cornfeld, Philip Aginsky of GPI, and others). Goldstein went on site to inspect the various involved properties, and she obtained information from the Miami-Dade County Property Appraiser, Clerk of Court, the City of Sunny Isles, and the Florida Division of Corporations on her own volition. Additionally, during the course of the witness interviews, she requested the parties to supply her with additional documents, which they did, and she reviewed all of the additional documents provided, which amounted to hundreds of additional pages of information.

4

RK or sell its land. After a one-hour specially set hearing, the trial court found that Goldstein's investigation was independent, reasonable, and conducted in good faith. The trial court expressly adopted Goldstein's factual findings and legal conclusions, accepted her recommendation that the matter be dismissed, and dismissed the amended derivative complaint with prejudice as to Cornfeld.

Analysis

Our standard of review of a trial court's order granting a motion to dismiss is *de novo*. Grove Isle Ass'n, Inc. v. Grove Isle Assocs., LLLP, 137 So. 3d 1081, 1088 (Fla. 3d DCA 2014).

*The parking property:* Cornfeld does not challenge the independence of the investigator; rather, he argues that there are material issues of disputed fact regarding the reasonableness and good faith of the investigation. He asserts that his personal interest in the sale of the Club property is irrelevant to the interests of the Club's unit owners. However, our review of the record below evidences self-interest has motivated his relationship with the Club for many years over his need for parking spaces for the Newport Hotel, one of his properties. He attempted to influence the third-party developer GPI's principal, Philip Aginsky, to purchase the land from the Club in order to secure parking for the Newport. There is evidence in the record suggesting that Cornfeld threatened the Club's attorney with a lawsuit if she failed to change her mind and convince the Club to sell the property without

5

a vote of approval from a majority of the unit owners, in direct contradiction to her own legal advice and other counsels' advice to the Club. Indeed, after the Club declined to sell the property to GPI, which was within its judgment to do, Cornfeld filed this derivative suit.

*The RK/sewer line issue*: The independent investigator queried many sources to determine whether the Club breached its fiduciary duty to the unit owners by failing to sue RK for damage to the Club's force main sewer line in 1995, which occurred during construction of the RK shopping center. The investigator determined that the Club, after consulting its attorneys on the matter, decided that it would not be cost-effective to sue RK, but rather to pay to fix the sewer lines itself.[3]

Throughout the complicated dealings over the years between the Club, RK, and Cornfeld, the Club sought the advice of its attorneys, followed its attorneys' conservative advice, and some of those decisions resulted in assessments passed on to the unit owners. Cornfeld does not allege, however, and the record below does not show, that the Club or its individual officers acted fraudulently, illegally, oppressively or in bad faith – elements necessary to sustain a derivative action on the corporation's behalf. §607.0831(1), Florida Statutes (2018) (providing

---

[3] The record indicates that problems with the sewer lines continued for many years, the causes for which are unclear, and may have stemmed from improperly sized pipes, overcapacity, low-lying land that tended to flood, among others.

insulation for condominium association directors from liability in their individual capacities absent fraud, criminal activity, self-dealing, or unjust enrichment); see Sonny Boy, L.L.C. v. Asnani, 879 So. 2d 25, 27 (Fla. 5th DCA 2004) ("[A]bsent fraud, self-dealing and betrayal of trust, directors of condominium associations are not personally liable for the decisions they make in their capacity as directors of condominium associations."); Farrington v. Casa Solana Condo. Ass'n, Inc., 517 So. 2d 70, 72 (Fla. 3d DCA 1987) (holding the 'business judgment rule' will protect a corporation's board of directors' business judgment as long as the board acted in a 'reasonable' manner in passing the special assessment). Indeed, "[a] corporation's refusal to sue might be considered unreasonable by one of its stockholders and still not be wrongful so as to justify a stockholder's derivative action." James Talcott, Inc. v. McDowell, 148 So. 2d 36, 38 (Fla. 3d DCA 1962).

On the issue of the Club's immunity from liability by virtue of the business judgment rule, we find no error in the trial court's acceptance of the facts and legal conclusions contained in Goldstein's independent report. See, e.g., Atkins v. Topp Comm, Inc., 874 So. 2d 626, 627 (Fla. 4th DCA 2004) (affirming dismissal of the derivative suit, finding that the dismissal was based on the trial court's conclusion that the independent investigator acted reasonably and with good faith in conducting his investigation). Goldstein, the independent investigator in this case, as did the investigator in Atkins, examined the merits of the proposed claims

7

and concluded that the derivative suit was not in the corporation's best interest. The record here reflects that Goldstein conducted numerous witness interviews, reviewed relevant documents, sought input from the attorneys for both sides, kept both sides advised as the investigation progressed, and presented a lengthy report to the court. The trial court did not abuse its discretion by adopting Goldstein's factual findings and legal conclusions, and finding that the report was reasonable and conducted in good faith. Given our conclusion that dismissal with prejudice was correct, we decline to address any remaining issues.

Affirmed.