# Third District Court of Appeal

## State of Florida

Opinion filed April 14, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-340
Lower Tribunal No. 17-13336
_____

**Eric Readon,**
Appellant,

vs.

**WPLG, LLC, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Alexander Bokor, Judge.

Andrew M. Kassier, P.A., and Andrew M. Kassier, for appellant.

Mitrani, Rynor, Adamsky & Toland, P.A., and Karen Kammer, for appellees.

Before FERNANDEZ, LOGUE, and GORDO, JJ.

LOGUE, J.

Eric Readon appeals the trial court's dismissal of his third amended complaint with prejudice against defendants WPLG, Inc. (successor in interest to WPLG, LLC), BH Media Group, Inc., Jeff Weinsier, Steve Owen, and Bill Pohovey (collectively, "WPLG"). Readon's complaint alleges defamation and defamation by implication against WPLG for reporting on certain business dealings between Readon and members of the public. Because Readon failed to allege any false statement that would affect the gist of the reports, actual malice in WPLG's reporting, or a defamatory implication, we affirm the trial court's order of dismissal.

**Factual Background**

The facts we must accept as true are contained within Readon's third amended complaint, the operative complaint for purposes of this appeal. Readon's allegations stem from three news reports broadcast by WPLG in 2017 and their corresponding internet articles.

Readon is a pastor and public figure. Because he is not paid for his ministerial service, Readon makes a living through business dealings including property management and real estate swaps. Several of Readon's previous business contacts, including some family members and friends, sued Readon in relation to these business activities.

According to the complaint, WPLG first learned of these lawsuits from an informant with a working relationship with WPLG and its employees. The informant advised WPLG of several lawsuits filed against Readon and WPLG subsequently confirmed their existence through a public records search. Before broadcasting its initial report, WPLG contacted Readon to discuss the allegations.

WPLG aired its initial story about Readon's previous business with Thomas Harper, Latasha Blue, Darrick Andrews, and Shanequa Veal. The story outlined that Harper had given Readon money as a deposit for a lease on a property owned by Readon, but Harper was not able to move into the property because it was occupied by a prior tenant. WPLG further reported allegations by Blue that he had placed a deposit for a vehicle that was never delivered, and by Andrews who stated that Readon had borrowed money to obtain the services of a music performer for a church event that never happened. WPLG correctly reported that the lawsuits from Veal and Harper had settled, however WPLG failed to state that no suit had been filed by Blue or Andrews at that time. Blue and Andrews both gave statements that were included as part of the report.

After the initial broadcast, WPLG was approached by several other members of the community with reports of negative experiences with

Reason. WPLG aired a second story about Readon, detailing the allegations of Edward Fuller. Specifically, Fuller alleged that Readon had acquired title to Fuller's home through his non-profit organization with a promise to help Fuller restore the home and return it to him.

The second broadcast further detailed an exchange between Readon and Berenton Whisenant who served as guardian ad litem for a minor child in a family court proceeding. In an email exchange, Readon implored Whisenant to pay particular care and attached a picture of a dead young man. The news story incorrectly reported that Readon had sent a picture of a dead body to a federal prosecutor. While Whisenant would eventually become a federal prosecutor, he was not yet a prosecutor when the picture was sent.

Several months later, WPLG broadcast a third story with allegations from Lorenzo Johnson and AAGG Investment, LLC. Johnson claimed that Readon had stolen a personal check from him and forged his signature on the check. During the broadcast, AAGG stated that Readon had not paid rent on a property that it had leased to him.

During each of the stories, Readon was referred to as a pastor and community leader. Many of the allegations in the news stories were voiced over images of Readon preaching in church or attending community events.

As noted above, Readon's third amended complaint alleged defamation and defamation by implication. WPLG moved to dismiss the complaint for failure to state a cause of action. The trial court held a hearing on the motion before dismissing the complaint with prejudice.

**Analysis**

We review a trial court's order granting a motion to dismiss de novo. Cornfeld v. Plaza of the Americas Club, Inc., 273 So. 3d 1096, 1098 (Fla. 3d DCA 2019).

**a. Defamation**

To state a claim for defamation of a public figure,[1] Readon was required to allege that WPLG's reports contained statements that were (1) false; (2) defamatory; (3) damaging; and (4) that the publisher acted with actual malice. Don King Prods., Inc. v. Walt Disney Co., 40 So. 3d 40, 43 (Fla. 4th DCA 2010).

---

[1] Normally, to determine if a plaintiff in a defamation lawsuit is a public figure, Florida courts employ a two-step process: "First, the court must determine whether there is a 'public controversy.'" Mile Marker, Inc. v. Petersen Publ'g, L.L.C., 811 So. 2d 841, 845 (Fla. 4th DCA 2002) (quoting Gertz v. Robert Welch, Inc., 418 U.S. 323, 351 (1974)). Second, "the court must . . . determine whether the plaintiff played a sufficiently central role in the instant controversy to be considered a public figure for purposes of that controversy." Id. at 846. Readon, however, asserts in his complaint that he is a public figure. Therefore, we accept Readon's statement as true and decline to engage in a public figure analysis.

5

Most of the statements Readon complains of cannot be defamation because they are true. In a defamation action against a media defendant, the Constitution requires that the plaintiff allege a false statement. Smith v. Cuban Am. Nat'l Found., 731 So. 2d 702, 706 (Fla. 3d DCA 1999) (citing Phila. Newspapers, Inc. v. Hepps, 475 U.S. 767, 775–76 (1986)). The complaint alleges that WPLG reported on allegations made by third parties about their business dealings with Readon. However, the complaint admits that those allegations were made and in many cases the lawsuits were pending or had been settled.

The only substantively false statement which Readon alleges, that he sent a picture of a dead body to a prosecutor, is not actionable in a defamation lawsuit. Florida recognizes the substantial truth doctrine in defamation cases. Smith, 731 So. 2d at 706. "Under the substantial truth doctrine, a statement does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true." Id. (quoting Masson v. New Yorker Mag., 501 U.S. 496, 517 (1991)). As long as a report is substantially correct, "[i]t is not necessary that it be exact in every immaterial detail or that it conform to the precision demanded in technical or scientific reporting." Woodard v. Sunbeam Television Corp., 616 So. 2d 501, 502–03 (Fla. 3d DCA 1993) (quoting Restatement (Second) of Torts § 611, cmt. f (1977)). Further,

6

Florida law recognizes a difference between statements presented as fact and statements presented as an opinion or rhetorical hyperbole. See Byrd v. Hustler Mag., Inc., 433 So. 2d 593, 595 (Fla. 4th DCA 1983). The key distinction is whether the incorrectly reported material would "have had a different effect on the mind of the viewer" by affecting "the gist of the story." Woodard, 616 So. 2d at 503.

The only "false" statement attributed to WPLG contained in the complaint did not affect the gist of the story by creating a different impression in the mind of the viewer. In reporting that Readon had sent a picture of a dead body to a federal prosecutor, WPLG failed to include information that the recipient was not a federal prosecutor at the time but was in his capacity as guardian ad litem. While this oversight made the statement untrue, it did not change the gist of the story that Readon had emailed a picture of a dead body to an attorney serving as a child's guardian. The third amended complaint therefore contains no actionable false statement and the claim for defamation was properly dismissed.

Readon also failed to allege that WPLG acted with actual malice. The First Amendment safeguards publishers from defamation suits brought by public figures unless the publisher acts with actual malice. Mia. Herald Publ'g Co. v. Ane, 423 So. 2d 376, 382 (Fla. 3d DCA 1982) (citing Curtis Publ'g Co.

7

v. Butts, 388 U.S. 130, 162–65 (1967) (Warren, C.J., plurality concurrence)). Actual malice is defined as "knowledge that the statement was false or reckless disregard of whether it was false or not." Don King Prods., 40 So. 3d at 43 (citing N.Y. Times Co. v. Sullivan, 376 U.S. 254, 279–80 (1964)). This standard requires "more than mere negligence." Id. Instead, reckless conduct, as defined by the United States Supreme Court in St. Amant v. Thompson, 390 U.S. 727, 731 (1968), includes:

> [R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.

Readon was therefore required to plead facts sufficient to give rise to a reasonable inference of actual malice. Michel v. NYP Holdings, Inc., 816 F.3d 686, 701–02 (11th Cir. 2016).

Readon failed to plead facts sufficient to show that WPLG published with sufficient doubts as to the truth of its publication. "Actual malice requires more than a departure from reasonable journalistic standards . . . [t]hus, a failure to investigate, standing on its own, does not indicate the presence of actual malice." Id. at 703 (citations omitted). Instead, "there must be some

8

showing that the defendant purposefully avoided further investigation with the intent to avoid the truth." Id. (citations omitted).

Care must be taken not to construe cases which have found a failure to investigate too broadly because the First Amendment "demands that the law of libel carve out an area of 'breathing space' so that protected speech is not discouraged." Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 686 (1989) (citations omitted). The analysis in this regard must always be informed by the safeguards provided by the First Amendment "fashioned to assure the unfettered interchange of ideas for the bringing about of political and social changes desired by the people." Roth v. United States, 354 U.S. 476, 484 (1957).

Readon argues that WPLG failed to properly investigate and include all relevant facts in its reporting. In Michel, the Eleventh Circuit recognized a limited set of circumstances in which actual malice might arise from a failure to investigate. The Michel Court stated that the plaintiff failed to show actual malice because the publication was not "fabricated by the defendants, wholly imaginary, based on an unverified anonymous phone call, inherently improbable, or obviously worthy of doubt." Id. at 705 (citing St. Amant, 390 U.S. at 732).

This limited set of circumstances conforms to the requirements of the First Amendment. As stated in St. Amant, it is not enough that a reasonably prudent person "would have investigated further." 390 U.S. at 731. Indeed, Florida law is well settled that the failure to investigate, without more, does not constitute actual malice. Palm Beach Newspapers, Inc. v. Early, 334 So. 2d 50, 52–53 (Fla. 4th DCA 1976). Instead, there must be "obvious reasons to doubt the veracity of the informant or the accuracy of his reports." St. Amant, 390 U.S. at 732.

The third amended complaint asserts that WPLG was contacted by a known informant who apprised the station of the allegations against Readon. Readon admits that WPLG verified the existence of the lawsuits naming him as a defendant by checking public court records. These facts conclusively show that the reports were not fabricated by WPLG, wholly imaginary, based on an unverified anonymous source, inherently improbable, or obviously worthy of doubt. Michel, 816 F.3d at 705. Further, Readon admits that he was contacted by WPLG to discuss the allegations. WPLG, therefore, had "no obvious reasons . . . to doubt the challenged statements, so its failure to conduct a more searching investigation does not show actual malice." Don King Prods., 40 So. 3d at 46.

10

Readon has not shown that WPLG's investigation was deliberately skewed to avoid uncovering what he calls "the whole truth." For instance, Readon points out that several of the cases had been settled and others involved family members. However, WPLG was not required to balance its reporting with potentially mitigating factors so long as the reporting did not "purposely [make] false statements about [Readon] in order to bolster the theme of the program or to inflict harm on [Readon]." Id. at 45. WPLG had no reason to believe that the statements made by Readon's accusers were not true, indeed, WPLG confirmed through both interviews and public records that those allegations existed. Further, the existence of similar allegations from various members of the community stemming from business dealings with Readon served to substantiate each of the allegations. Therefore, the third amended complaint fails to show that WPLG acted with actual malice.

Because the complaint failed to allege a relevant false statement or that WPLG acted with actual malice, Readon failed to state a claim for defamation.

**b. Defamation by Implication**

The third amended complaint also failed to state a claim for defamation by implication. As the Florida Supreme Court noted:

11

> Defamation by implication arises, not from what is stated, but from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts, such that he may be held responsible for the defamatory implication.

Jews for Jesus, Inc. v. Rapp, 997 So. 2d 1098, 1106 (Fla. 2008) (quoting Stevens v. Iowa Newspapers, Inc., 728 N.W. 2d 823, 827 (Iowa 2007)). "[W]hile defamation law shields publishers from liability for minor factual inaccuracies, it also works in reverse, to impose liability upon the defendant who has the details right but the 'gist' wrong." Id. at 1107–08.

WPLG did not impermissibly juxtapose a series of true facts so as to create a defamatory implication. Readon alleges that WPLG improperly juxtaposed his business dealings as a private person with his role as a pastor, thereby implying that the acts were committed in his role as pastor. In doing so, Readon has mistaken the purpose of the cause of action for defamation by implication. The tort requires that the implied fact be defamatory. But WPLG's negative statements about Readon were not the implication that his business dealings were done as a pastor, rather they were that he was engaging in a continuing pattern of deceitful business practices.

Readon's argument would result in a substantial chilling effect on the freedom of the press. A news agency such as WPLG will often name the

12

profession of the subject of their investigative reporting. When this person is a public figure, it is often this information which makes the reporting relevant to the public. This is not contingent, as Readon argues, on there being a connection between the profession and the alleged negative acts. Were we to accept Readon's position it would become nearly impossible for the media to report on various acts by public figures which have consistently shown to be relevant to the public such as a professional football player caught on camera engaging in domestic violence; a prominent businessman organizing an intricate sex trafficking ring; or a television and movie star promulgating racist, sexist, or homophobic tweets. None of these acts are related to the professions of the persons engaged in them, yet the reporting of both the acts and professions is relevant to the public debate and therefore reporting on such matters is protected by the First Amendment.

A classic example of defamation by implication was before the Second District in Heekin v. CBS Broad., Inc., 789 So. 2d 355, 358 (Fla. 2d DCA 2001).[2] In Heekin, the plaintiff alleged that a broadcast falsely portrayed him as a spouse abuser by juxtaposing an interview with his former spouse along

---

[2] While Heekin involved the since-disapproved tort for false light invasion of privacy, the Florida Supreme Court has noted that nearly all such claims could have been brought as defamation by implication. Jews for Jesus, 997 So. 2d at 1113.

with stories and pictures of women who had been abused and killed by their partners. 789 So. 2d at 357. Even though the reporting did not literally claim that the plaintiff was a spouse abuser, by overplaying his former wife's story with stories of spouse abuse, the reporting created the defamatory implication that the plaintiff had abused his spouse. Conversely, Readon has alleged no such defamatory implication. The negative statements about Readon, that he was engaged in potentially underhanded business dealings, were not implied but rather stated explicitly. The reporting of Readon's profession did not make these stories about Readon any more or less negative, but rather gave the public a context for why the stories were relevant.

Since the third amended complaint failed to allege any defamatory implication, Readon failed to state a cause of action for defamation by implication.

### c. Dismissal with Prejudice

Readon claims that the trial court improperly dismissed his complaint with prejudice rather than allow him to submit a fourth amended complaint to correct any errors in the pleadings. WPLG counters that because the original complaint suffered the same infirmities, no cause of action was ever pleaded

14

and therefore, the statute of limitations has run,[3] and nevertheless further amendment would be futile.

Ordinarily, a decision to allow leave to amend is within the sound discretion of the trial court, and "will not be overturned unless abuse is demonstrated." Holy Temple Church of God in Christ, Inc. v. Maxwell, 578 So. 2d 877, 878 (Fla. 1st DCA 1991). When making this determination "all doubts should be resolved in favor of allowing amendment." Adams v. Knabb Turpentine Co., 435 So. 2d 944, 946 (Fla. 1st DCA 1983). Generally, refusal to allow amendment of a pleading constitutes an abuse of discretion unless it clearly appears that allowing the amendment would prejudice the opposing party; the privilege to amend has been abused; or the amendment would be futile. See New River Yachting Ctr., Inc. v. Bacchiocchi, 407 So. 2d 607, 609 (Fla. 4th DCA 1981).

However, "as an action progresses, the privilege of amendment progressively decreases to the point that the trial judge does not abuse his

---

[3] WPLG's statement that the statute of limitations has run is of no consequence. Florida Rule of Civil Procedure 1.190(c) states: "When the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth *or attempted to be set forth* in the original pleading, the amendment shall relate back to the date of the original pleading." (emphasis added). Any amendment by Readon would be based on the news reports previously at issue in this litigation. Any amendment would therefore relate back.

15

[or her] discretion in dismissing with prejudice." <u>Kohn v. City of Miami Beach</u>, 611 So. 2d 538, 539 (Fla. 3d DCA 1992). This Court has "observed that with amendments beyond the third attempt, dismissal with prejudice is generally not an abuse of discretion." <u>Id.</u> (citing <u>Alvarez v. DeAguirre</u>, 395 So. 2d 213, 217 (Fla. 3d DCA 1981)). Readon's third amended complaint fails to state a claim against WPLG by not pleading any set of facts giving rise to a cause of action for either defamation or defamation by implication. Since further amendment would go beyond the third attempt, it was not an abuse of discretion for the trial court to dismiss with prejudice.

Affirmed.